Vincent HUIZAR, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–96–00837–CR.

Court of Appeals of Texas,
San Antonio.

March 18, 1998.

Richard E. Langlois, Law Offices of Richard D. Langlois, San Antonio, for Appellant.

Daniel Thornberry, Asst. Crim. Dist. Atty., San Antonio, for Appellee.

Before HARDBERGER, C.J., and RICKHOFF, LÓPEZ, STONE, GREEN, DUNCAN and ANGELINI, JJ., en banc.

## OPINION

LÓPEZ, Justice.

This appeal arises from the conviction of Vincent Huizar for aggravated sexual assault. A jury found Huizar guilty as charged and assessed punishment at confinement for 99 years and a $10,000.00 fine. Because we find reversible error in the trial court's punishment charge, we affirm the court's judgment of conviction, and reverse the sentence and remand for a new hearing on punishment.

The victim in this case, a sixth-grade student, reported to her school counselor that a man who was living at her house had sexually molested her the previous day. The counselor reported the event to Child Protective Services. The student, J.N., later reported that the man had assaulted her two other times. Shortly thereafter, Huizar, J.N.'s cousin, was indicted on one count of aggravated sexual assault.

In his only point of error, Huizar contends that he did not receive effective assistance of counsel at trial. Specifically, Huizar complains that during the guilt-innocence phase of his trial, his attorney failed to: (1) object to, or obtain adverse rulings to hearsay evidence by State's witnesses Williams, Morales, and Navarro; (2) object to, or to preserve error on testimony by Williams and the complainant, J.N., that the latter had been sexually abused by Huizar on multiple occa-

sions; (3) request a limiting instruction to inform jurors that they would have to find proof beyond a reasonable doubt before they could consider extraneous misconduct; and (4) object to victim-impact testimony by Lee Navarro. In addition to these trial failures, Huizar maintains that his attorney failed to render effective assistance during the punishment phase of his trial by failing to request an instruction to instruct jurors that evidence of the extraneous offense that he abused A.R. (another cousin) must be established beyond a reasonable doubt before they could consider that evidence.

Because of these failures, he argues, the jury was permitted to hear inadmissible testimony that was harmful to his case. These deficiencies, combined with his attorney's failure to preserve the trial record for appellate review, represents to Huizar, an "abdication of [his attorney's] basic threshold responsibility to require the State to establish guilt by admissible evidence." While Huizar recognizes that the constitutional right to counsel does not mean errorless counsel judged in hindsight, he argues that the combination of these circumstances show that his attorney's representation fell below the objective standard of reasonableness. Consequently, Huizar argues, this court should grant him a new trial.

In response, the State maintains that Huizar's trial attorney provided effective assistance by defending Huizar during the guilt-innocence phase of trial and by calling witnesses during the punishment phase. The State speculates that defense counsel's trial strategy may have been to admit to an improper relationship between Huizar and the child complainant, but to deny actual sexual intercourse to support an instruction on the lesser-included offense of indecency with a child. The State characterizes the failure to request a limiting instruction concerning the testimony of A.R. during the punishment phase as an isolated omission that did not constitute ineffective assistance of counsel.

Whether an attorney has provided effective assistance in the guilt-innocence phase of a non-capital trial is determined using the test set out in *Strickland v. Washington*, 466 U.S. 668, 698–99, 104 S.Ct. 2052, 2070–71, 80 L.Ed.2d 674 (1984); *see Holland v. State*, 761 S.W.2d 307, 314 (Tex.Crim.App.1988) (following standard established in *Strickland* to determine effectiveness of trial counsel); *Hernandez v. State*, 726 S.W.2d 53, 55–57 (Tex. Crim.App.1986) (adopting *Strickland* test in Texas). Under *Strickland*, the appellant must show that (1) his attorney's performance was deficient, and (2) that the deficient performance prejudiced the defense to such a degree that he was deprived of a fair trial. *See Holland*, 761 S.W.2d at 314 (reiterating *Strickland* test for ineffective assistance of counsel). Whether an attorney provided effective assistance is to be determined as of the time of trial, not through hindsight. *See Stafford v. State*, 813 S.W.2d 503, 506 (Tex.Crim.App.1991); *Butler v. State*, 716 S.W.2d 48, 54 (Tex.Crim.App.1986).

The *Strickland* test does not apply, however, to the punishment phase of a non-capital trial. Instead of *Strickland*, the test from *Ex parte Duffy* is used. *See Ex parte Duffy*, 607 S.W.2d 507, 516 (Tex.Crim.App. 1980) (establishing test for ineffective assistance of counsel in punishment phase of non-capital trial). Under *Duffy*, the appellate court must determine whether counsel was reasonably likely to render effective assistance and whether counsel reasonably rendered such assistance. *See Craig v. State*, 825 S.W.2d 128, 130 (Tex.Crim.App.1992); *Duffy*, 607 S.W.2d at 516. In applying this standard, the court must consider the totality of the circumstances to judge both the competency of counsel and the assistance actually rendered. *See Ex parte Felton*, 815 S.W.2d 733, 735 (Tex.Crim.App.1991).

### Huizar's Complaints About the Guilt–Innocence Phase of His Trial

As specific complaints about the guilt-innocence phase of his trial, Huizar relies on testimony that appears to have been inadmissible hearsay when taken out of context, but that does not consider other properly admitted evidence establishing the same facts. Huizar carefully dissected the reporter's record and identified the points at which his trial attorney *could* have done something more during trial, but did not, and then developed an argument for ineffective assis-

tance of counsel. For example, Huizar complains that his attorney failed to preserve error as to testimony by Witness Williams concerning extraneous misconduct.

Williams was the school counselor at J.N.'s school. During trial, Williams testified that J.N. told her that Huizar had assaulted her the previous day and that she reported the incident to Child Protective Services. In response to questioning by the State, Williams testified as follows:

Q: And do you remember about when she told you about this?

A: It was in May. It was like, you know, the last month of school.

Q: When she told you about it, did she tell you when was the last time it had happened?

A: The day before.

Huizar complains that by failing to request a hearing under article 38.072 of the Code of Criminal Procedure prior to the admission of this testimony, the jury was permitted to hear testimony that he had sexually assaulted J.N. more than once. Article 38.072 designates out-cry testimony as an exception to the hearsay rule. *See* TEX.CODE CRIM. PROC. ANN. art 38.072 (Vernon Supp.1997) (setting forth requirements for admissibility of hearsay statements of child abuse victim). This exception, however, applies only to statements that describe the charged offense and does not extend to extraneous conduct. *See Beckley v. State,* 827 S.W.2d 74, 78–79 (Tex. App.—Fort Worth 1992, no pet.). To determine admissibility of out-cry testimony, this article provides for a hearing outside the presence of the jury. Thus, by not requesting a hearing, Huizar waived error.

Although his attorney's performance may have been deficient in failing to request a hearing prior to Williams's testimony, thus satisfying the first prong of the *Strickland* test, Huizar ignores testimony by the complainant, J.N., who testified to the same thing in more specific terms.

In describing the events leading to her assault, J.N. testified as follows:

Q: When he did that, did you know what he was going to do?

A: Yes

Q: How did you know what he was going to do?

A: Because he did it before.

Q: And how many times before had he done it?

A: A few times.

Q: How many?

A: A few times.

■ Thus, the issue that was raised by Williams's testimony—whether Huizar had assaulted J.N. on more than one occasion—was established by properly admissible evidence. The reference by Williams to any previous assault was brief and unembellished. As a result, we do not determine that the failure to preserve error by not requesting a hearing prejudiced Huizar to such a degree as to deprive him of a fair trial. Because he had a fair trial, the second prong of the Strickland test is not satisfied. Huizar's attorney perhaps *should* have requested a hearing to determine the admissibility of Williams's testimony, but failure to do so does not amount to ineffective assistance of counsel under *Strickland.* Because the above is representative of Huizar's arguments regarding his attorney's performance during the guilt-innocence phase of his trial, we next address his complaints about his attorney's performance during the punishment phase of his trial.

### Huizar's Complaints About the Punishment Phase

In addressing the punishment phase of his trial, Huizar complains that his attorney failed to request that the jury be instructed that the evidence must establish beyond a reasonable doubt that Huizar abused A.R. before it could consider that evidence. A.R., another cousin of Huizar, testified during the punishment phase that Huizar had also sexually assaulted her. According to A.R., Huizar, who was a juvenile at the time, began touching her when she was eight or nine years old and that the touching had culminated in her assault when she was fourteen or fifteen.

■ While the jury may not consider extraneous offense evidence unless it believes

beyond a reasonable doubt that the defendant committed the extraneous offense, *see* TEX.CODE.CRIM. PROC. ANN. art. 37.07, § 3(a) (Vernon Supp.1998) (allowing "evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant" to be used in assessing punishment), failure to request such an instruction has not been held as ineffective assistance of counsel. Here, Huizar's attorney called five character witnesses during the punishment phase of Huizar's trial. In comparison, the State presented evidence about Huizar's convictions of a felony and three misdemeanors. A narcotics officer testified as to Huizar's bad character for not being peaceful and law abiding. An ex-girlfriend described Huizar's violent behavior after their separation, including the vandalizing of her and her sister's cars. Additionally, A.R.'s testimony was uncontroverted. Throughout trial, Huizar's attorney thoroughly examined witnesses, raised objections to the admissibility of evidence, and argued on his client's behalf. While his attorney should have asked for a reasonable-doubt instruction on extraneous offenses during the punishment phase, failure to ask for an instruction does not amount to ineffective assistance in the absence of authority requiring an instruction. *See Felton*, 815 S.W.2d at 735 (explaining that court must look at both totality of representation and particular circumstances of each case in determining effectiveness of counsel during punishment phase); *cf. Yates v. State*, 917 S.W.2d 915, 924 (Tex.App.—Corpus Christi 1996, pet. ref'd) (determining that attorney's failure to request reasonable-doubt instruction during punishment phase did not constitute ineffective assistance). Consequently, we overrule Huizar's point of error addressing ineffective assistance of counsel.

### *Failure to Instruct the Jury on the Burden of Proof During Punishment*

Although Huizar's complaint about the punishment phase of his trial was raised in the context of ineffective assistance, our review of the court's punishment charge raises serious questions about the sentence assessed by the jury. During the punishment phase trial, the State introduced substantial evidence of extraneous offenses and bad acts. First, the State called an ex-girlfriend to testify about Huizar's bad character. According to this witness, Huizar damaged her car when she broke up with him and refused to reconcile. Apparently, this incident resulted in a misdemeanor conviction for criminal mischief. The woman testified further that Huizar backed his car into her sister's car when the sister told Huizar that the ex-girlfriend would not talk with him. This incident appears from the State's exhibits to have resulted in a felony conviction for criminal mischief. According to the girlfriend's testimony, Huizar never hurt her physically, but continued to harass her about a reconciliation. On cross-examination, however, Huizar's attorney established that Huizar had repaired the woman's car and that he had not bothered the woman for four years.

Next, the State called a San Antonio Police officer who stated that he was assigned to the narcotics division and that Huizar was not a peaceful and law-abiding citizen. The officer did not elaborate about the basis of his opinion, but his testimony may have implied to the jury that he obtained his opinion as a result of his work as a narcotics officer. No evidence, however, connected Huizar to drugs.

Following the narcotics officer, a fingerprint expert verified that Huizar's fingerprints on State's Exhibit 7 matched the fingerprints on State's Exhibit 8 (court records pertaining to the first criminal mischief conviction that showed Huizar's probation may have been revoked for driving without a driver's license, failure to report, and failure to pay fees), Exhibit 9 (a court document that indicated Huizar spent 30 days in jail for resisting arrest or search), Exhibit 10 (a court document showing that Huizar spent 156 days in jail for evading arrest), and Exhibit 11 (court documents that showed Huizar had been sent to Boot Camp for 30 days). Although these exhibits are difficult to decipher and are very confusing, no one testified about the significance of the documents.

Finally, the State called Huizar's cousin, A.R., who testified that Huizar had also sex-

ually assaulted her when they were both juveniles. Following the cousin's testimony, Huizar's attorney called five witnesses who testified about Huizar's good character.

All of the above was evidence of extraneous conduct which had to be proved beyond a reasonable doubt prior to its consideration by the jury, yet the court's punishment charge did not instruct the jury on the burden of proof. Instead, the court's charge instructed the jury on the range of punishment, the defendant's right not to testify, that the jury could consider evidence introduced during the guilt/innocence phase of trial, that it must not assess punishment by lot, and about parole law. Exacerbating the absence of the burden of proof in the court's charge, however, are the following remarks made by the prosecutor during her punishment argument:

> We don't have a burden of proof in this stage. The State does not have a burden of proof to support whatever number of years we're asking you to give. The important point is that you all discuss, deliberate, and come to a number of years that everyone feels comfortable with and you know will send him a message.

Because the punishment charge was completely devoid of any instruction on the reasonable-doubt standard, these remarks summarize the jury's understanding about the burden of proof concerning the evidence of the extraneous offenses; that is, the State did not have to prove the extraneous conduct. Thus fundamental unfairness and considerations of due process involved in this case require us to address whether the jury must be instructed on the burden of proof during the punishment phase.[1]

### Instructing the Jury on the Burden of Proof During the Punishment Phase

The Texas Court of Criminal Appeals has determined that *Geesa v. State* created "an absolute systemic requirement that an instruction on reasonable doubt be submitted to the jury in all cases where the burden of proof requires the jury to find guilt beyond a reasonable doubt." *Reyes v. State*, 938 S.W.2d 718, 721 (Tex.Crim.App.1996). Failure to instruct the jury on the reasonable-doubt standard is automatic reversible error. *Id. Geesa*, though, dealt with the guilt/innocence phase of trial. *See Geesa v. State*, 820

1. The discretion of the courts of appeals to address unassigned error is well-established in Texas law. "Once the jurisdiction of an appellate court is invoked, exercise of its reviewing functions is limited only by its own discretion or a valid restrictive statute." *Carter v. State*, 656 S.W.2d 468, 469 (Tex.Crim.App.1983). The Court of Criminal Appeals recognized this discretion as recently as May 1997. *See Whatley v. State*, 946 S.W.2d 73, 76–77 n. 6 (Tex.Crim.App. 1997); *see also Rezac v. State*, 782 S.W.2d 869, 870 (Tex.Crim.App.1990); *Perry v. State*, 703 S.W.2d 668, 670 (Tex.Crim.App.1986). The Court of Criminal Appeals has examined unassigned error on many occasions, frequently in error involving jury charge or the admission of extraneous offenses. *See, e.g., Boutwell v. State*, 719 S.W.2d 164, 173 (Tex.Crim.App.1985) (op. on rehearing) (reviewing admission of extraneous sex acts as unassigned error because of fundamental unfairness and considerations of due process); *Antunez v. State*, 647 S.W.2d 649, 650 (Tex.Crim.App.1983) (considering unassigned fundamental error in jury charge); *Carriera v. State*, 663 S.W.2d 1, 1 (Tex.Crim.App.1983) (addressing fundamental error in jury charge as unassigned error and reversing); *Rocha v. State*, 648 S.W.2d 298, 299 (Tex.Crim.App.1982) (noting fundamental error in jury charge and reversing); *Gonzalez v. State*, 588 S.W.2d 574, 575 (Tex.Crim.App.1979) (reviewing sufficiency of the evidence on basis of unassigned error and reversing); *Romo v. State*, 568 S.W.2d 298, 302 (Tex. Crim.App.1977) (reviewing charge error out of Court's interest for justice); *Scott v. State*, 534 S.W.2d 711, 712 (1976) (considering sufficiency of the evidence with regard to State's burden of proof to show that prosecution was not barred by relevant statute of limitations even though that issue was not briefed). *But see McClure v. State*, 648 S.W.2d 667, 677 (Tex.Crim.App.1982) (op. on rehearing) (stating that Court of Criminal Appeals should not have reviewed erroneous admission of extraneous offense evidence as unassigned error because such error did not constitute fundamental error requiring review in the interest of justice). The new rules of appellate procedure also support review. Previously, the old rules required appellate briefs to include "points of error," but the new rules emphasize "issues." *Compare* TEX.R.APP. P. 74(d) (West 1997) (unannotated reprint), *with* TEX.R.APP. P. 38.1(e) (West 1997) (Special Supp.). The new rules provide that: "[t]he statement of an issue or point will be treated as covering every subsidiary question that is fairly included." TEX.R.APP. P. 38. The issue of whether Huizar was entitled to an instruction on the burden of proof, even though he did not request one, is fairly included in his argument that his trial counsel was ineffective for failing to request such an instruction.

S.W.2d 154, 162 (Tex.Crim.App.1991). Although *Geesa* did not address the punishment phase of trial, the Court of Criminal Appeals recognized the importance of the reasonable-doubt standard during the punishment phase in *Mitchell v. State. See Mitchell v. State,* 931 S.W.2d 950, 954 (Tex. Crim.App.1996).

In *Mitchell,* the Court explained that the use of extraneous offenses during the punishment phase is analogous to the guilt/innocence phase, and thus evidence of extraneous offenses introduced during the punishment phase must be proved beyond a reasonable doubt. *See Mitchell,* 931 S.W.2d at 954. After recognizing the importance of the burden of proof during the punishment phase, the Court then determined that denying a request for an instruction on reasonable doubt that addressed extraneous-offense evidence constitutes reversible error. *Id.* The Court reasoned that

> during the punishment stage of a trial, the jury as "the exclusive judge of the facts" is to determine whether or not the State has proved the extraneous offenses beyond a reasonable doubt and should be so instructed *when requested.* Thus the trial court erred in refusing to so instruct the jury when appellant requested such an instruction.

*Id.* (emphasis added). The *Mitchell* decision left open the question of whether the trial judge is bound to give an instruction on reasonable doubt, whether specifically addressing extraneous offenses or the burden of proof in general, when the defendant *does not* request an instruction. In the instant case, we believe the answer to this question is "yes."

■ In reaching this decision, we are influenced by *Coble v. State.* In *Coble,* the Court of Criminal Appeals held that so long as the court's punishment charge properly sets forth the State's burden of proof, failure to include a separate jury instruction cautioning the jury to consider only those extraneous offenses proved beyond a reasonable doubt is not error. *See Coble v. State,* 871 S.W.2d 192, 208 (Tex.Crim.App.1993). This holding was predicated upon a punishment charge that properly instructed the jury on

the reasonable-doubt standard. We interpret this decision to mean that, where during the punishment phase the State introduces evidence of extraneous offenses or bad acts purportedly to have been committed by the defendant, the court is required to instruct the jury on the burden of proof in some manner. Although the Court of Criminal Appeals permitted that instruction to be given by means of a general reasonable-doubt instruction by finding that the absence of a specific instruction was not error, the key point to the case is that some instruction was given. The conclusion that the jury must be instructed on the burden of proof during the punishment phase is supported by the language of article 37.07 of the Texas Code of Criminal Procedure.

Section 3(a) of article 37.07 of the Texas Code of Criminal Procedure permits the State to offer evidence of extraneous crimes and bad acts purportedly committed by the defendant during the punishment phase of a criminal trial. *See* TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(a) (Vernon Supp.1998). The jury is permitted to consider such extraneous acts if it is "shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally liable." *Id.* Because the jury is guided by the court's charge in assessing punishment, *cf. Geesa,* 820 S.W.2d at 159 (commenting that jury is guided by charge in determining guilt or innocence), the jury must be instructed on the reasonable-doubt standard if it is to properly consider evidence of extraneous offenses during the punishment phase. Logically then, the jury must be instructed on the reasonable-doubt standard whenever the State uses extraneous-offense evidence during the punishment phase.

Clearly, the drafters of the Code intended this result. This requirement is reflected in section 3(b) of article 37.07 which provides that:

> After the introduction of such evidence has been concluded, ... the court *shall give such additional written instructions as may be necessary* and the order of procedure and the rules governing the conduct

of the trial shall be the same as are applicable on the issue of guilt or innocence. TEX.CODE CRIM. PROC. art. 37.07, § 3(b) (Vernon 1981) (emphasis added). Notably, this language immediately follows the provision that permits the State to use such evidence. When this section is read in the context of section 3(a), the "additional instructions" language obviously refers to extraneous-offense evidence. If the State was restricted during the punishment phase to acts relevant to the charged offense, the "additional instructions" language would not be needed. Consequently, we interpret section 3(b) and the previously-discussed case law to mean that trial judge *must* instruct the jury on the burden of proof whenever the State introduces evidence of extraneous bad acts during the sentencing phase. Failure to instruct, then, is error.

### *Harm Analysis*

■■■■ Normally, charge error is reviewed using the standard set out in *Almanza v. State. See Almanza v. State,* 686 S.W.2d 157 (Tex.Crim.App.1985) (op. on reh'g) (addressing issue of reversible harm once error in jury charge is shown). But the Court of Criminal Appeals has indicated that the *Almanza*standard is limited to violations of articles 36.14 through 36.18 of the Code of Criminal Procedure that do not implicate state or federal constitutional rights. *See Abdnor v. State,* 871 S.W.2d 726, 732 (Tex. Crim.App.1994). Where charge error implicates a state or federal constitutional right, harmless-error analysis applies. *See id.* at n. 6; *see also* TEX.R.APP. P. 44.2 (old Rule 81(b))

(defining reversible error in criminal trials); *Reyes v. State,* 938 S.W.2d at 721 n. 10 (Tex.Crim.App.1996) (stating that *Almanza* did not apply to *Geesa* ). Because the reasonable-doubt instruction standard is both a state and federal constitutional right,[2] Rule 44.2 of the Texas Rules of Appellate Procedure applies. With the foregoing in mind, we proceed to harm analysis.

While no court has found reversible error under the circumstances presented here, the Court of Criminal Appeals has never addressed this issue. Although a specific instruction on extraneous-offense proof has been absent in several cases considered by the Court, a general instruction on reasonable doubt was contained in the jury charge in each of those cases.[3] In this case, the jury charge did not contain either a general burden-of-proof instruction or an instruction that specifically addressed extraneous-offense evidence.

The Texas Legislature has indicated that the procedural rules governing the punishment phase of trial are to be governed in the same manner as during the guilt/innocence phase. *See* TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(b) (Vernon 1981) (providing that "the order of procedure and the rules governing the conduct of the trial [during the punishment phase] shall be the same as are applicable on the issue of guilt or innocence"). Clearly, the procedural rules require the court to instruct the jury on the reasonable-doubt standard during the guilt/innocence phase of trial. *See Victor v.*

---

**2.** *See In re Winship,* 397 U.S. 358, 363–64, 90 S.Ct. 1068, 1072–73, 25 L.Ed.2d 368 (1970) (determining that reasonable-doubt standard maintains constitutional stature); TEX. CONST. art. I, § 19 (providing that no person will be deprived of life or liberty without due course of law); *Reyes,* 938 S.W.2d at 721(stating that *Geesa* created an absolute systemic requirement that jury be instructed on reasonable-doubt standard).

**3.** *See, e.g., Johnson v. State,* No. 72046, 1997 WL 209527 at *9, —— S.W.2d ——, —— (Tex.Crim. App. Apr.30, 1997), (stating that general instruction encompassed appellant's request for specific instruction on extraneous-offense evidence); *Jones v. State,* 944 S.W.2d 642, 654 (Tex.Crim. App.1996) (noting that it is not error to fail to include instruction addressing burden of proof on reasonable doubt so long as charge properly

sets out State's burden of proof); *Mitchell,* 931 S.W.2d at 954 (reversing because trial court denied defendant's request for instruction specifically addressing extraneous-offense evidence); *Coble,* 871 S.W.2d at 208 (holding that, as long as charge properly sets forth State's burden of proof, failure to include a separate jury instruction cautioning jury to consider only those extraneous offenses proved beyond a reasonable doubt is not error); *Marquez v. State,* 725 S.W.2d 217, 226 (Tex.Crim.App.1987) (determining that defendant was adequately protected by other portions of charge which instructed jury on reasonable-doubt standard); *Santana v. State,* 714 S.W.2d 1, 10–12 (Tex.Crim.App.1986) (rejecting appellant's argument that due process required separate instruction on extraneous-offense evidence).

*Nebraska,* 511 U.S. 1, 5–7, 114 S.Ct. 1239, 1243, 127 L.Ed.2d 583 (1994) (describing reasonable-doubt standard as a requirement of due process); *Reyes,* 938 S.W.2d at 721 (determining that *Geesa* created an absolute systemic requirement for instruction on reasonable doubt); *Geesa,* 820 S.W.2d at 162 (adopting instruction for reasonable doubt for use in all criminal trials). Because article 37.07 requires extraneous offenses to be proved beyond a reasonable doubt before consideration in assessing punishment, *see* TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(a) (Vernon Supp.1998), the procedural rules required the court to instruct the jury on the reasonable-doubt standard during the punishment phase of Huizar's trial in some manner, *see id.* § 3(b) (Vernon 1981) (requiring application of same procedural rules during punishment phase of trial).

■ In the punishment phase of Huizar's trial, Witness A.R. testified that Huizar had also assaulted her. This testimony implicated an offense clearly extraneous to the charged offense. The court's charge, however, did not instruct the jury that it was permitted to consider A.R.'s testimony only if it believed her testimony to be true beyond a reasonable doubt. As previously noted, the court's charge also did not contain a general instruction on the reasonable-doubt standard. Without such an instruction, the jury was permitted then to consider evidence without determining whether the State had proved beyond a reasonable doubt that Huizar had also assaulted A.R.. Because we cannot conclude under these circumstances that the failure to instruct did not contribute to the Huizar's sentence, we find that the trial court committed reversible error by failing to instruct the jury on the reasonable-doubt standard. *See* TEX.R.APP. P. 44.2(a) (old Rule 81(b)) (directing appellate court to reverse punishment unless court determines beyond a reasonable doubt that error did not contribute to punishment). Any other disposition would require us to assume the jury *knew* it was to apply the reasonable-doubt

standard and that it *used* the standard, or alternatively, to assume that the jury did not consider A.R.'s testimony at all in assessing punishment. In view of the 99 year sentence assessed here, we are not willing to make either of these assumptions. As a result, we vacate Huizar's sentence and remand for a new hearing on punishment.

Dissenting opinion by DUNCAN, J.

DUNCAN, Justice, dissenting.

Until today, no court in this State had held that a trial court must instruct a jury on the burden of proof for extraneous offense evidence admitted during the punishment phase of a criminal trial regardless of whether such an instruction is requested; nor had any court held that the failure to give such an instruction constitutes automatic reversible error. *See Mitchell v. State,* 931 S.W.2d 950, 954 (Tex.Crim.App.1996) (holding trial court erred in refusing appellant's request to instruct jury on burden of proof for extraneous offense evidence admitted during punishment phase and remanding to court of appeals to conduct harm analysis pursuant to *Almanza v. State,* 686 S.W.2d 157 (Tex.Crim.App. 1985) (op.on reh'g));[1] *Tow v. State,* 953 S.W.2d 546, 548 (Tex.App.—Fort Worth 1997, no pet. h.); *Yates v. State,* 917 S.W.2d 915, 922–23 (Tex.App.—Corpus Christi 1996, pet. ref'd) (assuming, without deciding, that failure to give instruction was error and applying *Almanza* "egregious harm" standard); *Escovedo v. State,* 902 S.W.2d 109, 113–114 (Tex.App.—Houston [1st Dist.] 1995, pet. ref'd) (holding trial court erred in refusing defendant's requested instruction and applying *Almanza* "actual harm" standard); *Smith v. State,* 899 S.W.2d 31, 35 (Tex. App.—Austin 1995, pet. ref'd)(per curiam)(assuming, without deciding, that failure to give instruction was error and applying *Almanza* "egregious harm" standard); *cf. Cormier v. State,* 955 S.W.2d 161, 163–64 (Tex.App.—Austin 1997, no pet. h.)(applying *Almanza* "egregious harm" standard to fail-

---

**1.** The *Mitchell* opinion was joined by only two judges—its author, Judge Overstreet, and Judge Baird. *See Mitchell,* 931 S.W.2d at 954 (White, J., not participating); 954–55 (Clinton, J., expressly declining to join plurality opinion and

instead approving Judge Meyers' concurring opinion); 955 (Meyers, J., joined by Maloney, J., concurring); 957 (McCormick, P.J., joined by Mansfield and Keller, JJ., dissenting).

ure to define "reasonable doubt" in instruction on burden of proof for extraneous offense evidence admitted during punishment phase); *Splawn v. State*, 949 S.W.2d 867, 874 (Tex.App.—Dallas 1997, no pet.)(although "mindful of ... *Reyes*," court applies *Almanza* "egregious harm" standard to failure to define "reasonable doubt" in punishment phase burden of proof instruction in reliance upon *Mitchell* and *Matchett v. State*, 941 S.W.2d 922, 928 (Tex.Crim.App. 1996), *cert.denied*, —— U.S. ——, 117 S.Ct. 2487, 138 L.Ed.2d 994 (1997), in which the court "held that although certain types of error, by their nature, resist meaningful harm analysis and thus are categorically precluded from a harm analysis review, courts should make a case by case determination of whether in fact a meaningful harm analysis is possible for any particular case").

In fact, the judges on the Texas Court of Criminal Appeals split as to whether such an instruction should be given even if it is requested. *See Mitchell*, 931 S.W.2d at 955–57 (Meyers, J., joined by Clinton and Maloney, JJ., concurring) (if some evidence of extraneous offense admitted, whether burden met is issue of fact for jury); 955 (Clinton, J., concurring) (same); 957 (McCormick, P.J., joined by Mansfield and Keller, JJ., dissenting) (whether burden met is question of preliminary admissibility and therefore issue for trial court to resolve). As a result, *Mitchell* is at best a plurality opinion and, therefore, of limited precedential value. *See Vernon v. State*, 841 S.W.2d 407, 410 (Tex.Crim.App. 1992).

The other decision relied upon so heavily by the majority—*Reyes v. State*, 938 S.W.2d 718 (Tex.Crim.App.1996)—is also a plurality opinion, and one that achieved plurality status only because Judge Meyers believed the result to be an unavoidable consequence of *Geesa v. State*, 820 S.W.2d 154, 155 (Tex. Crim.App.1991). *Reyes*, 938 S.W.2d at 721–22 (Meyers, J., concurring). Judge Meyers also recognized, however, that "[s]uch a result may ... compel a majority of this Court to reexamine *Geesa* in the future," and, he noted, ("were that to happen, [he] might very well join them in that endeavor."); *see also id.* at 722 (Mansfield, J., dissenting), 724 (Keller, J., joined by McCormick, P.J., and White, J., dissenting).

Against this backdrop, and in light of the considerations expressed in a multitude of opinions rejecting the doctrine of presumed harm, I would not reach out to consider whether the trial court must give this instruction—an issue that has not been briefed or argued—nor will I join the majority in being the first in Texas to extend *Geesa* and hold this unassigned "error" is not subject to a harm analysis under either Rule 44.2, Tex. R.App. P., or *Almanza.* To do so puts this court in conflict with the plurality opinion in *Mitchell*, every other Texas court of appeals considering the issue, and what I believe to be not just the legally correct path but the wise and prudent one as well, as suggested by *Matchett*'s retreat and the concurring and dissenting opinions in *Reyes*.

I would presume error, as the Austin and Corpus Christi Courts of Appeals did in *Smith* and *Yates*, and apply *Almanza*'s "egregious harm" standard as the Court of Criminal Appeals instructed the court of appeals to do in *Mitchell.* Ultimately, because I do not believe this record demonstrates either that Huizar suffered "egregious harm" because of the absence of a *Mitchell* instruction or that he received ineffective assistance of counsel, I would affirm the trial court's judgment.

Dissenting opinion joined by GREEN and ANGELINI, JJ.