**Fredrick Deno SPARKS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 12–95–00176–CR.**

Court of Appeals of Texas,
Tyler.

Oct. 31, 1996.

**463**

Ardon Moore, Tyler, for appellant.

Edward J. Marty, Tyler, for appellee.

RAMEY, C.J., and CHARLES R. HOLCOMB and HADDEN, JJ.

CHARLES R. HOLCOMB, Justice.

Frederick Deno Sparks ("Appellant") was convicted by a jury of the crime of theft and sentenced to ten years in prison, probated for a period of ten years, and a fine of $3,500.00. Sparks raises six points of error on appeal. We will **affirm**.

In his first and second points of error, Appellant contends that the evidence was both legally and factually insufficient to prove Appellant was criminally responsible for the offense charged, either by his own conduct or that of another. We disagree.

When an appellant challenges both the legal and factual sufficiency of the evidence, an appellate court must first determine whether evidence adduced at trial was legally sufficient to support the verdict. *Clewis v. State*, 922 S.W.2d 126, 133 (Tex.Cr.App.1996). The standard for reviewing the legal sufficiency of the evidence is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *See also Geesa v. State*, 820 S.W.2d 154, 157 (Tex.Cr.App. 1991); *Richardson v. State*, 879 S.W.2d 874, 879 (Tex.Cr.App.1993), *cert. denied*, —— U.S. ——, 115 S.Ct. 741, 130 L.Ed.2d 643 (1995). An appellate court should uphold the jury's verdict "unless it is found to be irrational or unsupported by more than a mere modicum of evidence." *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Cr.App.1988).

After an appellate court determines that the evidence is legally sufficient to support the verdict under the *Jackson* standard, the court may then proceed to review factual sufficiency. *Clewis*, 922 S.W.2d at 133. In conducting a factual sufficiency review, this Court must view all the evidence impartially and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis*, 922 S.W.2d at 135; *Bigby v. State*, 892 S.W.2d 864, 875 (Tex.Cr.App.1994), *cert.*

*denied,* —— U.S. ——, 115 S.Ct. 2617, 132 L.Ed.2d 860 (1995).

In a circumstantial evidence case, it is not necessary that each fact, by itself, directly and independently prove the guilt of the accused. The cumulative force of all the incriminating circumstances may be sufficient to warrant a conclusion of guilt. *Beardsley v. State,* 738 S.W.2d 681, 685 (Tex. Cr.App.1987). Circumstantial evidence cases have no different standard of review than those cases supported by direct evidence. *Geesa v. State,* 820 S.W.2d 154, 158 (Tex.Cr. App.1991).

In order to prove that Appellant committed the offense of theft, the State was required to prove that Appellant unlawfully appropriated property with the intent to deprive the owner of such property. TEX. PENAL CODE ANN. § 31.03(a) (Vernon 1994). A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, or by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. TEX. PENAL CODE ANN. § 7.02(a)(2) (Vernon 1994).

At approximately 3:00 a.m. on March 12, 1993, Officers Hayes and Lewis were in their patrol car in Tyler when they received a call of suspicious activity at nearby apartments. The officers noticed a Chevrolet Caprice being driven very slowly and without headlights. The officers followed the Caprice, which immediately sped off. The driver of the Caprice outran the police, but not before the officers were able to see the occupants of the car. Officer Hayes described the occupants of the Caprice as two black men.

While Hayes and Lewis were still looking for the Caprice, they saw a Buick drive by. The driver of the Buick resembled the Caprice driver. Hayes and Lewis notified Officer Roberts, also in the area, to watch for the Caprice or the Buick. Roberts saw the Buick coming from the expected direction. Roberts followed the Buick, and the Buick's driver tried to evade Roberts. The driver attempted to turn into a local country club, but struck a tree in the median. Both the driver and the passenger jumped out of the

Buick and ran. Roberts chased them and caught the driver, Vincent Tucker. As Roberts caught Tucker, he heard a splash as if someone dove into the lake. Roberts described the fleeing passenger as wearing a dark shirt and baggy gray pants.

At approximately 4:45 a.m., Appellant knocked on the door of a nearby home. It was very cold and raining. Appellant asked the residents to call his mother. Appellant was wearing a wet sweatshirt and jeans, but no shoes. The couple called Appellant's mother and furnished Appellant with dry clothes. When asked about the location of the accident, Appellant was very evasive. Appellant's mother arrived and began to question him about the location of the wreck. Appellant sharply told his mother to "shut up," and there was no further conversation between them. After Appellant left with his mother, the homeowners noticed that their storage shed was open. Upon inspection, they found a pair of shoes that did not belong to anyone in their family, a screwdriver, and that someone had attempted to make a bed in the storage building.

Officers subsequently discovered that both the Caprice and the Buick were stolen. The officers searched the Buick and found stolen property, including cans of chili, that had been in the Caprice when stolen. Tucker and Appellant were charged with theft of the Buick and other related crimes.

Viewing all of the evidence in a light most favorable to the prosecution, there was legally sufficient evidence to support Appellant's conviction for theft of the Buick. Sparks' mere presence in the Buick is not sufficient evidence in itself to support his conviction as a party to this offense, but combined with other facts, suffices to show that he was a participant.

Hayes, one of the officers who pursued the stolen Caprice, testified that the occupants were two black males wearing dark clothing. He further testified that the area in which he and his partner lost sight of the Caprice had limited access, so he called for another officer to cover one of the streets to see if the suspects might try to exit the area. Within ten to fifteen minutes, the officers saw the

Buick being driven at a high rate of speed, occupied by two men fitting the description of the two previous suspects. They began pursuit of the Buick and radioed for help from the other officer who was parked to the north which was the direction in which the Buick was traveling. Both police cars pursued the Buick, and, as noted above, the driver of the Buick tried to elude them and wrecked the car. Hayes also testified that the steering column on the Buick and the Caprice had been broken open or "popped." According to Hayes, car thieves commonly use screwdrivers to pop steering columns on vehicles.

Additional circumstantial evidence connected Appellant to the crime. The officer who apprehended the driver of the car testified that he saw the other suspect fleeing and that the suspect was wearing a dark top and jeans or sweat pants. The owner of the residence where Appellant sought aid testified that Appellant was dressed in a dark sweatshirt and jeans. Appellant's flight from the officers on the golf course as they captured the other suspect is yet another indication of guilt. Further, the chili from the stolen Caprice found in the Buick linked Appellant to the entire criminal episode. Finally, the jury could infer that Appellant used a screwdriver to pop the steering columns on the stolen vehicles and left the screwdriver in the storage shed.

In light of the numerous permissible inferences of Appellant's guilt, we hold that a rational jury could have found Appellant guilty of theft, either through his own conduct or as a party to the offense, beyond a reasonable doubt. Therefore, we overrule Appellant's first point of error.

Having determined that the evidence was legally sufficient, this Court must now examine all of the evidence impartially to determine if the evidence was factually sufficient to support the verdict. Appellant's presence in the Buick, the fact that the Buick was stolen, and the presence of stolen property in the Buick are uncontroverted. It is also uncontroverted that Appellant was present in the area shortly after the theft without shoes on a cold, rainy night. Further, soon after Appellant left the area with his mother, the occupants of the home who had rendered him assistance found shoes along with an instrument similar to that used to steal the cars. After reviewing all of the evidence, we hold that the verdict was not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. We therefore overrule Appellant's second point of error.

■ In his third point of error, Appellant contends that the trial court erred in admitting evidence of the stolen Caprice and the stolen property found in the Buick. Specifically, Appellant states that the evidence was not relevant, that it was admitted to show Appellant's character and that he acted in conformity therewith, and that the prejudicial effect of the evidence substantially outweighed the probative value of the evidence. We disagree.

At trial, Appellant argued that the crime spree evidence should have been excluded because: 1) it was not relevant; 2) it was impermissible character evidence; 3) Appellant did not receive timely notice of the State's intent to use the evidence pursuant to Rule 404(b); and 4) the evidence tendency to prejudice the jury substantially outweighed its probative value. The trial court ruled that the evidence was not admissible under Rule 404(b) because the State failed to timely notify Appellant of its intent to introduce such evidence. However, the trial court also ruled that the evidence was relevant and admissible as same-transaction contextual evidence. Further, the court impliedly ruled that the evidence's probative value was not substantially outweighed by its prejudicial effect.

As a general rule, relevant evidence is admissible. TEX.R.CRIM. EVID. 402. Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action, more probable or less probable than it would be without the evidence. TEX.R.CRIM. EVID. 401. "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." TEX. R.CRIM. EVID. 404(b). Evidence of other crimes, wrongs or acts may be admitted if such evidence has relevance apart from the

tendency to prove the character of the accused. *Alba v. State*, 905 S.W.2d 581, 585 (Tex.Cr.App.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 783, 133 L.Ed.2d 734 (1996). For example, Rule 404 states that evidence of other crimes, wrongs or acts may be admitted to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. TEX.R.CRIM. EVID. 404(b). Similarly, the Penal Code states that evidence that the actor has previously participated in recent transactions other than, but similar to, that upon which the prosecution is based is admissible for the purpose of showing knowledge or intent and the issues of knowledge or intent are raised by the actor's plea of not guilty. TEX. PENAL CODE ANN. § 31.03(c) (Vernon 1994 & Supp. 1996).

In addition to the exceptions contained in the evidence rules and statute, evidence of the context or background in which events transpired that helped the jury to understand a particular transaction may be admissible. "Same-transaction contextual evidence" refers to other offenses connected with the primary offense and is admissible when the evidence is necessary for the State to logically present evidence of the charged offense. *Lockhart v. State*, 847 S.W.2d 568, 570 (Tex.Cr.App.1992), cert. denied, 510 U.S. 849, 114 S.Ct. 146, 126 L.Ed.2d 108 (1993); *Blakeney v. State*, 911 S.W.2d 508, 514 (Tex. App.—Austin 1995, no pet.). An appellate court reviews a trial court's admission of same-transaction evidence for an abuse of discretion. *Blakeney*, 911 S.W.2d at 514.

Once the trial court determines that evidence of an extraneous offense is admissible as same-transaction contextual evidence, the court must, upon proper objection, balance the probative value of the evidence against the danger of unfair prejudice. However, the trial court is not required to state that it has conducted the balancing test. *Nolen v. State*, 872 S.W.2d 807, 812 (Tex. App.—Fort Worth 1994), *pet. ref'd*, 897 S.W.2d 789, 790 (1995); *Houston v. State*, 832 S.W.2d 180, 184 (Tex.App.—Waco 1992, pet. dism'd). A court has performed the balancing test when it has heard the objection, considered it, and overruled it. *Hous-*

*ton*, 832 S.W.2d at 184. The fact that a trial judge conducted a proper balancing test can be implied from the record. *Duckworth · v. State*, 833 S.W.2d 708, 710–11 (Tex.App.— Beaumont 1992, no pet.). The prejudicial nature of same-transaction contextual evidence rarely renders such evidence inadmissible so long as it sets the stage for the jury's comprehension of the whole criminal transaction. *Mock v. State*, 848 S.W.2d 215, 223 (Tex.App.—El Paso 1992, pet. ref'd).

The crime spree evidence describes the circumstances culminating in the wreck of the Buick, the apprehension of Tucker, and the subsequent arrest of Appellant. Officers Hayes and Lewis would not have followed the Buick and alerted Officer Roberts had they not seen Tucker and Appellant in the Caprice. The two car thefts and two car chases are inexplicably interwoven.

We hold that the trial court did not abuse its discretion in ruling that the crime spree evidence constituted same-transaction contextual evidence indivisibly connected to this offense and therefore relevant. Further, the trial court did not abuse its discretion in ruling that the possible prejudicial effect of the evidence did not substantially outweigh its probative value. We therefore overrule Appellant's third point of error.

In his fourth point of error, Appellant argues that, because the crime spree evidence was admitted, the trial court should have given the jury an instruction limiting the evidence to the purpose for which it was admitted. However, a limiting instruction is not required when evidence is admitted as same-transaction contextual evidence. *Camacho v. State*, 864 S.W.2d 524, 535 (Tex.Cr. App.1993). Because the trial court did not abuse its discretion in admitting the evidence as same-transaction contextual evidence, no limiting instruction was required, and we overrule Appellant's fourth point of error.

In his fifth point of error, Appellant alleges that the trial court erred in admitting evidence that Appellant was the nephew of the driver because such evidence was not relevant and its probative value was substantially outweighed by its prejudice to Appel-

lant and confusion of the issues. We disagree.

As noted above, the State was required to prove that Appellant intended to participate in the theft of the Buick. The Prosecutor asked whether there was any relationship between Tucker and Appellant. The reply was that "they are related." The fact that Appellant was related to Tucker tended to prove that Appellant intended to participate in the crime and was not a mere innocent bystander. The court did not abuse its discretion in ruling that the evidence of Appellant's relationship to the driver was relevant and that the probative value of such evidence was not substantially outweighed by its prejudicial effect. We overrule Appellant's fifth point of error.

In his sixth point of error, Appellant argues that the trial court erred in admitting certain hearsay testimony. Specifically, Appellant complains of the following exchange:

State: What was the reason that you were looking for suspicious activity around 3:30 am on those early morning hours of March 12, 1993?

Officer: We had a report of some burglaries taking place—

Appellant argues that the officer was relating an out-of-court statement and that such statement constituted inadmissible hearsay. We disagree. " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." TEX.R.CRIM. EVID. 801(d). A statement offered for the purpose of showing what was said rather than the truth of the matter stated is not hearsay. *Dinkins v. State,* 894 S.W.2d 330, 347 (Tex.Cr.App.), *cert. denied,* —— U.S. ——, 116 S.Ct. 106, 133 L.Ed.2d 59 (1995).

The State offered the Officer's testimony to show why he was in the area, not for the truth of the statement that "some burglaries are taking place." Because the evidence was not offered for its truth, it was conceptually not hearsay, and the trial court did not abuse its discretion in admitting such evidence.

Therefore, we overrule Appellant's sixth point of error.

The judgment is **affirmed.**