No. 04-98-00386-CR



Carmen GARZA,


Appellant



v.



The STATE of Texas,


Appellee



From the 186th Judicial District Court, Bexar County, Texas


Trial Court No. 95CR5193


Honorable W.E. Bachus, Jr., Judge Presiding



Opinion by: Phil Hardberger, Chief Justice


Sitting: Phil Hardberger, Chief Justice

 Catherine Stone, Justice

 Sarah B. Duncan, Justice


Delivered and Filed: May 12, 1999


AFFIRMED


 Carmen Garza ("Carmen") pled guilty before a jury and was convicted of intoxication
manslaughter. The jury assessed punishment at twenty years confinement. In three points of error,
Carmen asserts: (1) the trial court reversibly erred in failing to properly admonish her; (2) the trial
court reversibly erred in failing to give a reasonable doubt instruction during the punishment phase
of the trial; and (3) she received ineffective assistance of counsel. We overrule these contentions and
affirm the trial court's judgment.

Failure to Admonish


 In her first point of error, Carmen contends the trial court reversibly erred by failing to
admonish her concerning the deportation consequences of her plea in accordance with article 26.13(a)
of the Texas Code of Criminal Procedure. The State concedes that no admonishment was given
regarding deportation; however, the State asserts that Carmen has failed to show that the absence of
the admonishment resulted in harm or caused her plea to be involuntary.(1)

 In Carranza v. State, the Texas Court of Criminal Appeals clarified that a trial court errs when
it wholly fails to admonish a defendant of the deportation consequences of a guilty plea. 980 S.W.2d
653, 656 (Tex. Crim. App. 1998). Such error is of non-constitutional dimension, however, and to
be entitled to reversal, a defendant must show "no more than that he was not aware of the
consequences of his plea and that he was misled or harmed by the admonishment of the court." Id.
at 658. In Carranza, the defendant was able to show that he was unaware of the consequences and,
as a result of his plea, he was subject to a greater risk of deportation and had limited rights in seeking
judicial relief from deportation orders. Id.

 In the present case, Carmen did not show that she was unaware of the consequences of her
plea or that she was misled or harmed by the trial court's failure to admonish. Therefore, Carmen
has not shown that the trial court's failure to admonish her regarding the deportation consequences
of her guilty plea resulted in harm or caused her plea to be involuntary.

Reasonable Doubt Instruction


 In her second point of error, Carmen complains of the trial court's failure to include a
reasonable doubt instruction in the punishment charge submitted to the jury. Carmen contends that
such an instruction was necessary because: (1) evidence of extraneous offenses was introduced which
the jury was required to find beyond a reasonable doubt; and (2) the jury was asked to determine
whether Carmen used a deadly weapon.

 With regard to the extraneous offense evidence, the State responds that no instruction was
necessary because the acts Carmen refers to as extraneous offenses are not extraneous offenses but
are "part and parcel of the facts pertinent to the crime." In addition, the State responds that a
reasonable doubt instruction is not required in the absence of a request for such an instruction. With
regard to the deadly weapon finding, the State asserts that there is no constitutional or statutory
mandate that requires the State to prove the affirmative finding beyond a reasonable doubt. In
addition, the State asserts that the failure to give an instruction as to the deadly weapon finding was
waived in the absence of a request for such an instruction.

 A. Extraneous Offense Evidence

 In her brief, Carmen contends that evidence of four extraneous offenses was introduced. In
order to evaluate the State's contention that the acts were not extraneous offenses, it is necessary to
review the evidence relating to these acts.

 Willie Garza, Jr. ("Junior"), Carmen's husband at the time of this offense, testified regarding
the events that preceded his father's death. His testimony is largely undisputed. Carmen was
drinking at a public establishment in celebration of the birthday of Willie Garza, Sr. ("Senior"). When
Carmen, Junior and Senior left the establishment, Carmen and Senior began arguing. Shortly after
the argument began, Carmen grabbed Senior by the neck and kissed him. In her brief, Carmen refers
to this act as an extraneous offense of assault. Junior ended the argument by grabbing Carmen,
walking her to the car, giving her the keys, and telling her to leave. Carmen slapped Junior's face.
This is referred to in Carmen's brief as evidence of another extraneous offense of assault. While
Carmen was leaving the parking lot, she ran over Junior and Senior. Senior died as a result. After
leaving the parking lot, Carmen was stopped on suspicion of driving while intoxicated. The arresting
officer testified that he had difficulty identifying Carmen because they could not find a driver's license
and Carmen used a different name. Carmen refers to this act as the extraneous offense of failure to
identify. Finally, the officer who attempted to administer the intoxilyzer test testified that while they
were waiting to take the test, Carmen asked the officer to lean forward so she could lick his lips.
Carmen refers to this act as the extraneous offense of offering a gift to a public servant.

 "Same transaction contextual evidence" refers to other offenses connected with the primary
offense and is admissible when the evidence is necessary for the state to logically present evidence
of the charged offense. Lockhart v. State, 847 S.W.2d 568, 570 (Tex. Crim. App. 1992); Sparks v.
State, 935 S.W.2d 462, 466 (Tex. App.--Tyler 1996, no pet.). The reason for admitting such
evidence is "simply because in narrating the one it is impracticable to avoid describing the other, and
not because the other has any evidential purpose." Mayes v. State, 816 S.W.2d 79, 86-87 n.4 (Tex.
Crim. App. 1991). Crimes do not occur in a vacuum, and the state is entitled to prove the
circumstances surrounding the crime even though they may seem like irrelevant details. Cunningham
v. State, 982 S.W.2d 513, 521 (Tex. App.--San Antonio 1998, pet. ref'd); Wilkerson v. State, 874
S.W.2d 127, 131 (Tex. App.--Houston [14th Dist.] 1994, pet. ref'd). The other offenses described
in Carmen's brief are intermixed or blended with the primary offense such that they would be
admissible as same transaction contextual evidence.

 The Texas Court of Criminal Appeals has held that a limiting instruction is not required when
evidence is admitted as same transaction contextual evidence. Camacho v. State, 864 S.W.2d 524,
535 (Tex. Crim. App. 1993). However, it does not appear that the Texas Court of Criminal Appeals
has addressed whether a reasonable doubt instruction is required where evidence of other offenses
is admitted during the punishment phase of a trial as same transaction contextual evidence. The issue
has been addressed by the Fort Worth court of appeals in Norrid v. State, 925 S.W.2d 342, 349 (Tex.
App.--Fort Worth 1996, no pet.). In Norrid, the Fort Worth court reasoned that a reasonable doubt
instruction was not required since the defendant was not on trial for the extraneous offense and the
jury would not be required to find those elements. 925 S.W.2d at 349. Generally, when extraneous
offense evidence is offered at punishment, it is offered to assist the jury in evaluating the defendant's
character for purposes of assessing punishment. In that instance, the state must bear the burden of
proving that the defendant committed the extraneous offense, because it will be used as evidence
against the defendant. Where the evidence is presented as same transaction contextual evidence, the
state is not offering the evidence to prove the defendant's character but simply to explain the
surrounding circumstances. Although the jury may use the evidence to assess the defendant's
character, by holding that a limiting instruction is not required, the Texas Court of Criminal Appeals
has already decided that we should not concern ourselves with that possibility. Therefore, since same
transaction contextual evidence is not offered as evidence against a defendant, but simply to explain
the circumstances of the offense, a reasonable doubt instruction is not required.


 B. Deadly Weapon Finding

 With regard to the necessity for the reasonable doubt instruction based on the deadly weapon
finding, Carmen notes that the jury charge required the jury to find beyond a reasonable doubt that
Garza used a deadly weapon. The State responds, acknowledging that the Texas Court of Criminal
Appeals stated in Hill v. State, 913 S.W.2d 581 (Tex. Crim. App. 1996), that the state is required to
prove the use of a deadly weapon beyond a reasonable doubt to be entitled to an affirmative finding.
However, the State asserts that no authority supports that statement in the Hill opinion and that such
a requirement has no statutory or constitutional basis.

 In a jury trial, the state can obtain a deadly weapon finding in one of three manners: (1) if the
indictment specifically alleges the accused used or exhibited a deadly weapon and the jury finds the
defendant guilty as charged; (2) the jury finds the accused guilty as charged and the weapon pled is
a deadly weapon per se; or (3) if the jury provides an affirmative response to a special issue
concerning the defendant's use or exhibition of a deadly weapon. Polk v. State, 693 S.W.2d 391, 396
(Tex. Crim. App. 1985). Since the indictment in this case did not contain an allegation as to a deadly
weapon, the jury was required to provide an affirmative response to a special issue concerning the
use of a deadly weapon because a motor vehicle is not a deadly weapon per se. Medina v. State, 962
S.W.2d 83, 88 (Tex. App.--Houston [1st Dist.] 1997, pet. ref'd) (motor vehicle not deadly weapon
per se); Morgan v. State, 775 S.W.2d 403, 406 (Tex. App.--Houston [14th Dist.] 1989, no pet.)
(same).

 Although the State contends that there is no support for the Hill court's adoption of a
requirement that the State prove the use of a deadly weapon beyond a reasonable doubt, we are
bound by Hill until the Court of Criminal Appeals reverses its position. See Sheridan v. State, 950
S.W.2d 755, 758-59 (Tex. App.--Fort Worth 1997, no pet.) (applying Hill); Powell v. State, 939
S.W.2d 713, 718 (Tex. App.--El Paso 1997, no pet.) (applying Hill to evaluate sufficiency of
evidence supporting finding). Moreover, the "beyond a reasonable doubt" standard was applied by
appellate courts to evaluate the sufficiency of the evidence to support an affirmative finding on use
of a deadly weapon even prior to the issuance of Hill. See, e.g., Kent v. State, 879 S.W.2d 80, 82-83
(Tex. App.--Houston [14th Dist.] 1994, no pet.) (applying beyond a reasonable doubt standard in
evaluating evidence to support finding); Thomas v. State, 875 S.W.2d 774, 779 (Tex.
App.--Beaumont 1994, pet. ref'd) (same); Arizmendez v. State, 807 S.W.2d 436, 439 (Tex.
App.--Houston [14th Dist.] 1991, no pet.) (same).

 In this case, the jury was instructed that it was required to find beyond a reasonable doubt that
the defendant used a deadly weapon; however, no definition of reasonable doubt was given. In Fields
v. State, 966 S.W.2d 736, 742 (Tex. App.--San Antonio 1998, pet. granted), we noted that the
definition on reasonable doubt was made an inextricable part of the court's instruction on reasonable
doubt in Geesa v. State, 820 S.W.2d 154, 162-63 (Tex. Crim. App. 1991). We held that the trial
court erred in failing to define reasonable doubt in connection with a reasonable doubt instruction
regarding the requisite proof of extraneous offenses introduced at the punishment phase. Fields, 966
S.W.2d at 741-42. We previously held in Huizar v. State, that the trial court is required to give the
reasonable doubt instruction even in the absence of a request where extraneous offenses are
introduced into evidence during the punishment phase of a trial. 966 S.W.2d 702, 708 (Tex.
App.--San Antonio 1998, pet. granted).

 Carmen would have us extend our holdings in Huizar and Fields to the failure to define
reasonable doubt when a jury is instructed that it must affirmatively find the use of a deadly weapon
beyond a reasonable doubt. We decline to do so. In Huizar, we held that the reasonable doubt
instruction was required to be given in the absence of a request because a procedural rule, section
3(b) of article 37.07, required that the instruction be given, and the procedural rules governing the
punishment phase of trial are to be applied in the same manner as during the guilt/innocence phase.
966 S.W.2d at 709-10. In Fields, we held that a definition of reasonable doubt was required to be
given in the absence of a request because the procedural rules require that the reasonable doubt
instruction be given and the definition is an inextricable part of that instruction. 966 S.W.2d at 741-42. In this case, no procedural rule requires that a jury be instructed on the reasonable doubt standard
when the jury is asked to determine whether a deadly weapon was used. Absent a procedural rule
requiring such an instruction, the reasoning in Huizar and Fields is inapplicable, and by failing to
request a reasonable doubt instruction, Carmen waived her right to complain of its omission on
appeal. See Posey v. State, 966 S.W.2d 57, 61 (Tex. Crim. App. 1998).

Ineffective Assistance of Counsel


 The constitutional right to counsel means the right to effective assistance of counsel.
Strickland v. Washington, 466 U.S. 668, 686 (1984). There is a strong presumption that effective
assistance was rendered and that reasonable professional judgment was exercised in making
significant decisions. See Strickland, 466 U.S. at 690. The defendant bears the burden to prove
ineffective assistance of counsel by a preponderance of the evidence. See Moore v. State, 694 S.W.2d
528, 531 (Tex. Crim. App. 1985); Ybarra v. State, 890 S.W.2d 98, 112 (Tex. App.--San Antonio
1994, pet. ref'd).

 Until recently, the standard for reviewing an ineffective assistance of counsel claim arising
during the guilt/innocence phase differed from the standard applied in reviewing an alleged deficiency
in counsel's performance during the punishment phase of a trial. In Hernandez v. State, No. 506-97,
1999 WL 212791 (Tex. Crim. App. Apr. 14, 1999), the Texas Court of Criminal Appeals eliminated
this distinction and held that the two-prong standard set forth in Strickland applied to both phases
of trial.

 To obtain a reversal based on ineffective assistance of counsel, appellant must show that (1)
counsel made such serious errors that he was not functioning effectively; and (2) counsel's deficient
performance so prejudiced the defendant that but for counsel's errors, the trial outcome would have
been different. See Strickland, 466 U.S. at 687; Holland v. State, 761 S.W.2d 307, 314 (Tex. Crim.
App. 1988). Prejudice is demonstrated when the convicted defendant shows "a reasonable probability
that, but for counsel's unprofessional errors, the result of the proceedings would have been different."
Strickland, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine
confidence in the outcome. Id.

 a. Reasonable Doubt Instruction. Carmen contends that counsel was ineffective based on
his failure to request a "beyond a reasonable doubt" instruction. With regard to the failure to request
a reasonable doubt instruction as to the offenses that were same transaction contextual evidence, we
have held that such an instruction was not required. Therefore, the failure to request such an
instruction could not be ineffective assistance. With regard to the failure to request the reasonable
doubt definition in connection with the reasonable doubt instruction on the deadly weapon finding,
"failure to ask for [a definition] does not amount to ineffective assistance in the absence of authority
requiring [a definition]." Huizar, 966 S.W.2d at 706.

 b. Improper Impeachment. Carmen next asserts that trial counsel permitted the State to
improperly impeach her daughter regarding her daughter's probation for driving while intoxicated.
During direct examination, defense counsel elicited testimony from Carmen's daughter, Chrissy
Bacera, that after Carmen was previously convicted for two DWIs, Carmen avoided drinking and
driving. During cross-examination, the State initially inquired into whether Carmen continued
drinking while on probation. Bacera stated that she did not drink "avidly" and that Carmen had gone
for a long period of time without drinking. The State then inquired into whether Bacera believed that
her mother had a drinking problem. Bacera stated that she did not. Although the State then inquired
into Bacera's probation for DWI, the questioning led to an inquiry into whether Carmen kept alcohol
in the home in which she lived with Bacera and whether Carmen was upset with Bacera about her
DWI. Bacera responded that no alcohol was kept in the house since her mother's arrest and that her
mother was upset with her for her DWI. Although the questioning regarding Bacera's probation
damaged her credibility, it led to further questioning that helped Carmen. Carmen's negative
response to Bacera's probation showed that Carmen did not condone drinking and driving, and her
refusal to keep alcohol in the house since her arrest showed that she had changed her views with
regard to alcohol. Since this questioning came directly after the questioning regarding Bacera's
probation, trial counsel's decision to not object and allow the questioning to continue could have been
sound trial strategy, and since the impeachment of Bacera did not directly damage Carmen, the failure
to object did not detract from the reasonably effective assistance trial counsel was providing.

 c. Murder Charge. Carmen further contends that when trial counsel asked whether she was
charged with murder during direct examination, it raised negative connotations and implied that she
intentionally caused Senior's death. The State asserts that the testimony was elicited as sound trial
strategy to preclude the State from eliciting the testimony during cross-examination, thereby giving
the appearance that Carmen was being open with the jury. In addition to avoiding the question during
cross-examination, trial counsel could have asked the question to show the jury that although Carmen
was initially charged with murder, she was only indicted for intoxication manslaughter. With this
testimony, trial counsel could have intended to send the jury a message that the State was unable to
prove Carmen caused Senior's death intentionally and instead had to proceed with the theory that the
offense occurred by accident or mistake. Therefore, trial counsel could have asked the question as
sound trial strategy.

 d. Misinforming Venire Regarding Punishment Range. Carmen also complains that trial
counsel misinformed the venire regarding the punishment range by failing to communicate that the
trial judge could impose some jail time as a condition for probation. Carmen contends that trial
counsel could have provided this information during the following exchange:

 MR. WOODS: Can you consider that [probation] as part of the range of punishment?
Okay. Flores, Munn, Whitman, Malain.

 PROSPECTIVE JUROR: Excuse me. Could you repeat what you just said?

 MR. WOODS: I hope so without catching anybody's trouble over here, but I'm going
to try. Can you -- if understanding -- let me phrase this this way. In a case where
the charge is intoxication manslaughter a person is found guilty by their plea or
otherwise understanding that a person placed on probation is given conditions of
probation that are given by the Judge and some of the conditions which I read to you
earlier.

 Now it's up to the Judge to impose whatever conditions there are, but
considering that you can consider, or do you still feel you could not consider to
recommend probation as part of the punishment to a person convicted of intoxication
manslaughter?

 PROSPECTIVE JUROR: In other words, would I consider probation for something
like that? Manslaughter intoxication? No.

 PROSPECTIVE JUROR: Probation only or probation on top of time served? Or any
part of it?

 MR. WOODS: Let's put it this way. As Mr. Spoor stated, a person is eligible for
probation if they, before, have not [been] convicted of a felony.

 PROSPECTIVE JUROR: But you can also serve time and then have probation after
your time is served.

 MR. WOODS: I think you're talking about parole.

 PROSPECTIVE JUROR: Isn't that still probationary time that can be given after a
sentence?

 MR. WOODS: Again, well I tell you the federal system has that but -- you're talking
about a split sentence. But the federal system has that, but we don't have that. A
person's eligibility for probation is any time recommended by the jury up to ten years.
Beyond ten years they're not eligible for probation.


Trial counsel was reasonably effective in responding to the questions posed. While in hindsight it may
have been helpful to have mentioned the possibility that jail time could be imposed as a condition of
probation, given the flow of the exchange, counsel was not ineffective in failing to mention that
possibility.

Conclusion


 Carmen did not show that the trial court's failure to admonish her regarding the deportation
consequences of her guilty plea resulted in harm or caused her plea to be involuntary. Carmen also
failed to prove that her trial counsel was ineffective. The extraneous offenses about which Carmen
complains are same transaction contextual evidence, and no reasonable doubt instruction is required
in relation to that evidence. Furthermore, Carmen waived any right to complain of the trial court's
failure to define reasonable doubt in relation to the deadly weapon finding by failing to request such
a definition. The trial court's judgment is affirmed.


 PHIL HARDBERGER,

 CHIEF JUSTICE


PUBLISH 

1. Since the failure to admonish affects the voluntariness of Garza's plea, we have jurisdiction to address this
issue despite Garza's open plea to the jury. See Flowers v. State, 935 S.W.2d 131, 133 (Tex. Crim. App. 1996).