

## NUMBER 13-14-00594-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

ELENILSON FLORES-RODRIGUEZ,                                    **Appellant,**

**v.**

THE STATE OF TEXAS,                                           **Appellee.**

### On appeal from the 389th District Court
### of Hidalgo County, Texas.

## MEMORANDUM OPINION

### Before Justices Rodriguez, Benavides, and Perkes
### Memorandum Opinion by Justice Perkes

Appellant Elenilson Flores-Rodriguez appeals his conviction for aggravated robbery, enhanced to a first-degree felony.   *See* TEX. PENAL CODE ANN. § 29.03 (West, Westlaw through 2015 R.S.).   After a jury found appellant guilty, it assessed punishment at twenty-five years' imprisonment in the Texas Department of Criminal Justice—Institutional Division.   Appellant raises four issues on appeal.   His first two issues allege

the trial court erred in not granting appellant's motion for a directed verdict. By his third and fourth issues, appellant challenges the denial of his motion to suppress and the admission of certain testimony. We affirm.

## I. BACKGROUND

Jessica Jasso, the complainant, drove into the rear parking lot of the London Grill & Tavern around midnight to meet friends who were celebrating a birthday. Once in the dark parking lot, she parked her pickup truck and began applying makeup. As she did, Jasso noticed a man—later identified as appellant—standing some distance away from her truck, staring at her. His staring made Jasso uneasy, so she sent a text message to her friend inside the London Grill asking her friend to come out to the parking lot and meet her. After sending the message, Jasso looked up and saw appellant standing directly next to her driver's side door. Jasso noticed he was wearing a blue polo-style shirt with a yellow embroidered patch on the front. Tapping on the driver's side window with a black revolver, appellant commanded Jasso to open her door or he would shoot her. He grabbed the door handle, attempting to gain entry while repeatedly demanding that Jasso open the truck's door. Jasso sounded the truck's horn in an attempt to attract attention. Unable to do so, she reversed the truck away from appellant as he fired his weapon at her. She left the parking lot in reverse and drove to the front of the London Grill where she alerted a security guard.

Police officers arrived shortly, and Jasso described the suspect. Jasso left with Officer Manual Flores and proceeded to the police station while Officer Josue Mendez went to look for the suspect. After a brief search, Officer Mendez spotted a man

2

matching the suspect's description walking away from the London Grill, through a brushy area, and onto the sidewalk. Officer Mendez noticed that the man kept looking over his shoulder as he walked. Approaching the man from behind, Officer Mendez activated his cruiser's overhead lights and stopped him. The man was wearing a dark polo shirt with a yellow embroidered emblem on the front, blue jeans, and dark shoes. Officer Mendez checked for weapons, and, finding none, asked the man his name and date of birth. The man identified himself as "Carlos Humberto Rodriguez" and gave a birthday of November 25, 1969. Officer Mendez then asked where he was coming from and what he had been doing. "Carlos" responded that he came from a bar where he was drinking with "a friend," but could not provide the name of the bar or the name of the friend.

Several minutes after Officer Mendez detained "Carlos," Officer Flores arrived with Jasso. Jasso identified "Carlos" as the man who attempted to rob her. Officer Mendez arrested "Carlos" and explained that he was under arrest for aggravated robbery. "Carlos" responded, "but you didn't find a gun on me." During the investigation, the police officers learned that "Carlos" was actually appellant Elenilson Flores-Rodriguez. Several days later, a police investigator recovered a black handgun from behind a movie theater adjacent to the London Grill. The weapon was identified as a .22 short revolver. Though the weapon was in poor condition, it was loaded with clean and shiny ammunition. The cylinder contained three live rounds and one expended shell casing.

During the guilt-innocence phase of the trial, appellant moved to suppress his pre-arrest statement to Officer Mendez regarding the false name—objecting under Texas Rules of Evidence 404(b) and 403—and his post-arrest statement concerning the

absence of a firearm. Appellant argued that his statement about the firearm was in response to a custodial interrogation. The trial court denied appellant's motion to suppress. The court also allowed the testimony about the false name, albeit with a limiting instruction. Appellant was found guilty by the jury and sentenced per the jury's recommendation. This appeal followed.

## II. MOTION FOR DIRECTED VERDICT

By his first issue, appellant argues that the trial court erred by denying his motion for a directed verdict. Specifically, appellant alleges there is legally insufficient evidence to support a conviction for aggravated robbery. By his second issue, appellant also argues there is legally insufficient evidence to support the conviction because the owner of the property was never identified. Because they are related, we will address these issues together.[1]

### A. Standard of Review and Applicable Law

A challenge to a trial court's denial of a motion for a directed verdict is treated as a challenge to the sufficiency of the evidence. *Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996); *Hime v. State*, 998 S.W.2d 893, 896 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd). An appellate court, viewing the evidence in the light most favorable to the prosecution, reviews the sufficiency of the evidence by determining whether any rational juror could have found the essential elements of the offense beyond a reasonable doubt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing

---

[1] Appellant also complains that the evidence is factually insufficient to support his conviction however, criminal verdicts can no longer be challenged on the grounds of "factual" insufficiency of the evidence. *See Brooks v. State*, 323 S.W.3d 893, 894–95 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 99 (1979)).

*Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)); *Powell v. State*, 194 S.W.3d 503, 506 (Tex. Crim. App. 2006); *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004)); *Rosillo v. State*, 953 S.W.2d 808, 811 (Tex. App.—Corpus Christi 1997, pet. ref'd). When reviewing the sufficiency of the evidence, an appellate court must defer to the jury as to the weight and credibility given to the witnesses' testimony. *See Marshall v. State*, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006). It is the jury's sole function to assign credibility to the witnesses, assess the strength of the evidence, and resolve conflicts of fact. *Martinez v. State*, 198 S.W.3d 36, 50 (Tex. App.—Corpus Christi 2006, no pet.).

We measure the sufficiency of the evidence by the elements of the offense as defined by the hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). "Such a charge would accurately set out the law, would be authorized by the indictment, and would not unnecessarily increase the State's burden of proof." *Id.* Under a hypothetically correct jury charge as authorized by the indictment in this case, the elements of the offense of aggravated robbery are: (1) appellant; (2) intentionally or knowingly; (3) in the course committing a theft; (4) exhibited or used a deadly weapon. *See* TEX. PENAL CODE ANN. §§ 29.02, 29.03 (West, Westlaw through 2015 R.S.).

**B.    Analysis**

Appellant challenges the sufficiency of the evidence showing that his conduct was "in the course of committing a theft." Appellant argues the State offered insufficient evidence to show that he intended to steal Jasso's truck, or any other property. Jasso, however, testified that appellant approached her truck, brandished a pistol, and

5

demanded that she open the door. Jasso also stated that appellant attempted to open the door of the truck and that, when she drove away, appellant fired his pistol at her.

Rarely will there be direct evidence of intent at the time of the incident. *Scott v. State*, 202 S.W.3d 405, 408 (Tex. App.—Texarkana 2006, pet. ref'd). Thus, the fact-finder usually must infer intent from circumstantial evidence rather than direct proof. *Id.* We conclude a reasonable factfinder could find that appellant's actions of brandishing a firearm while attempting to open Jasso's driver's side door were undertaken in an attempt to gain entry to the vehicle. What follows is the logical inference that by attempting to enter the vehicle on the driver's side, appellant intended to steal Jasso's truck.[2]

Appellant further claims that the evidence is legally insufficient to prove an underlying theft because the owner of the property was not identified. In support of his argument, appellant cites *Byrd v. State*. 336 S.W.3d 242 (Tex. Crim. App. 2011). In *Byrd*, the Court of Criminal Appeals addressed a variance issue in a shoplifting case where the indictment identified the property owner as "Mike Morales." *Id.* at 245. At trial, the State proved that Wal-Mart was the property owner and not "Mike Morales." *Id.* at 253. The *Byrd* Court found a material variance between the indictment and evidence at trial, which amounted to a failure of proof. *Id.* at 258. The court concluded that the material variance rendered the evidence insufficient to support the conviction. *Id.*

---

[2] We likewise reject appellant's argument that his conviction must be reversed because he failed to consummate the theft. The law does not require a completed theft to support a conviction under theft statutes. *See Cooper v. State*, 439 S.W.3d 426, 430 (Tex. Crim. App. 2014) ("We explained [in an earlier case] that the robbery statute does not require that a theft be completed; it requires only that the person be "in the course of committing theft.").

*Byrd* is distinguishable. As the *Byrd* court noted, "[n]owhere in the penal code is the name of the owner a substantive element of theft." *See id.* at 251 (citing *Freeman v. State*, 707 S.W.2d 597, 602–03 (Tex. Crim. App. 1986) (plurality op.) (name of the property owner is not a part of the definition of theft, although the name of the owner must be alleged in the charging instrument)); *but see Rudd v. State*, 616 S.W.2d 623, 624 (Tex. Crim. App. 1981) (The elements of the particular theft or attempted theft need not be alleged if the indictment alleges the robbery occurred "in the course of committing theft" or "while committing theft"). Texas law provides that "owner means a person who has title to the property; possession of the property, whether lawful or not; or a greater right to possession of the property than the actor." TEX. PENAL CODE ANN. § 1.07(a)(35)(A) (West, Westlaw through 2015 R.S.). Based on her position, Jasso may be an owner of the truck if, at the time of the commission of the offense, she had a greater right to possession than appellant. *See Johnson v. State*, 606 S.W.2d 894, 896 (Tex. Crim. App. 1980).

The record supports a conclusion that Jasso had a greater right to possession of the truck than appellant. Jasso testified she arrived at the London Grill in the truck. Although she did not testify that the truck was titled in her name, nowhere does the record indicate appellant owned the truck. Appellant points to no evidence indicating his superior right to possess the truck, and our review of the record reveals none. *See* TEX. PENAL CODE ANN. § 1.07(a)(35)(A).

7

We hold that the evidence was sufficient to support appellant's conviction. See *Williams*, 937 S.W.2d at 482; *Martinez,* 198 S.W.3d at 50. We overrule appellant's first and second issues.

### III. MOTION TO SUPPRESS

By his third issue, appellant claims the "trial court erred in not granting his motion to suppress [his] statements made by the accused, as there was no evidence, or insufficient, that [a]ppellant was not in custody and his statements were a result of custodial interrogation made without benefit of Miranda warnings and such statements resulted in harmful error."

### A. Standard of Review

We review a trial court's ruling on a motion to suppress for an abuse of discretion. *Ex Parte Moore*, 395 S.W.3d 152, 158 (Tex. Crim. App. 2013). In reviewing a trial court's ruling on a motion to suppress, we view all of the evidence in the light most favorable to the trial court's ruling. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). The trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2008); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000) (en banc). "This is so because it is the trial court that observes first-hand the demeanor and appearance of a witness, as opposed to an appellate court which can only read an impersonal record." *Ross*, 32 S.W.3d at 855; *see Wiede*, 214 S.W.3d at 24. While we review the trial court's legal rulings de novo, we afford "almost total deference" to the trial court's determination of historical facts that the record supports, "especially when the trial

8

court's findings are based on an evaluation of credibility and demeanor." *State v. Kelley*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006); *Ross*, 32 S.W.3d at 856 (quoting *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997) (en banc)); *see Wiede*, 214 S.W.3d at 25. We grant the same amount of deference to the trial court's rulings on mixed questions of law and fact that turn on credibility and demeanor. *Wiede*, 214 S.W.3d at 25; *Ross*, 32 S.W.3d at 856.

## B. Applicable Law

The State may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966); *Alvarado v. State*, 853 S.W.2d 17, 20 (Tex. Crim. App. 1993). In order for the *Miranda* safeguards to apply, there must be two showings: (1) the suspect must have been "in custody," and (2) the police must have "interrogated" the suspect either by express questioning or its functional equivalent. *Little v. State*, 853 S.W.2d 179, 183 (Tex. App.—Corpus Christi 1993, no pet.); *see Rhode Island v. Innis*, 446 U.S. 291, 300–302 (1980); *Jones v. State*, 795 S.W.2d 171, 174 (Tex. Crim. App. 1990) (en banc).

"Interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response from the suspect. *Innis*, 446 U.S. at 300–301; *Jones*, 795 S.W.2d at 174. Not all statements obtained by the police after a person has

been taken into custody are to be considered the product of interrogation. *See Innis*, 446 U.S. at 299. As the Court in *Miranda* noted:

> Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. . . . Volunteered statements of any kind are not barred by the Fifth Amendment. . . .

*Id.* (citing *Miranda,* 384 U.S. at 478). The special procedural safeguards outlined in *Miranda* are required not where a suspect is simply taken into custody, but rather where a suspect in custody is thereafter subjected to interrogation. *Id.* "Interrogation," as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself. *Id.*

**C.    Analysis**

Appellant's statement about not possessing a firearm came shortly after his arrest for aggravated robbery. According to Officer Mendez, his communication with appellant consisted of general investigative questions, then an explanation of the charges for which appellant was under arrest. It is undisputed that appellant made his statement after he was placed under arrest. Appellant was in custody. *See Little,* 853 S.W.2d at 183. Appellant's statement, however, was not made pursuant to an "interrogation."

Examining the context and circumstances surrounding appellant's statement, we fail to see how Officer Mendez's explanation of the charges can amount to compulsion sufficient to rise to an "interrogation." *See Innis*, 446 U.S. at 299. Rather than questioning appellant, Officer Mendez gave an affirmative factual statement and

10

provided, rather than sought, information. Such interaction is not an interrogation. *See Miranda*, 384 U.S. at 444 ("By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."). Appellant's third issue is overruled.

## IV. EXTRANEOUS OFFENSE TESTIMONY

By his fourth issue, appellant claims the trial erred by admitting testimony regarding his allegedly providing the arresting officer a false name. Specifically, appellant argues that the trial court admitted the testimony in violation of Texas Rule of Evidence 404(b). *See* TEX. R. EVID. 404(b).

### A. Standard of Review

We review a trial judge's decision on the admissibility of evidence under an abuse of discretion standard. *Johnson v. State*, __ S.W.3d __, __, No. PD-1496-14, 2016 WL 3017842, at *10 (Tex. Crim. App. May 25, 2016); *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). A trial judge abuses his discretion when his decision falls outside the zone of reasonable disagreement. *Martinez v. State,* 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). If the trial court's evidentiary ruling is correct under any applicable theory of law, it will not be disturbed even if the trial court gave a wrong or insufficient reason for the ruling. *Id.*

### B. Applicable Law

An extraneous offense is not admissible as character evidence to show the accused acted in conformity with his character and committed an offense. TEX. R. EVID. 404(b); *see also Hernandez v. State*, No. 13-01-804-CR, 2003 WL 22052570, at *4 (Tex.

11

App.—Corpus Christi Sept. 4, 2003, pet. ref'd) (mem. op., not designated for publication).

However, extraneous-offense evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." TEX. R. EVID. 404(b).

When the State attempts to adduce evidence of "other crimes, wrongs or acts," the defendant may object on the basis that the evidence has no value other than showing propensity based on bad character under Rule 404(b). *See Montgomery v. State*, 810 S.W.2d 372, 387 (Tex. Crim. App. 1990) (op. on reh'g) (en banc). Once that complaint is lodged, the State must satisfy the trial court that the other crime, wrong, or act has relevance apart from its tendency to prove the defendant's character conformity. *Almaguer v. State*, __S.W.3d__, __, No. 13-12-00605-CR, 2014 WL 5088386, at *11 (Tex. App.—Corpus Christi Oct. 9, 2014, pet. ref'd) (op. on reh'g).

## C.  Analysis

After his initial contact with Officer Mendez, appellant provided the name "Carlos Humberto Rodriguez," later determined to be untrue. Appellant claims the officer's testimony of this "false identity" should not have been allowed since its admission was for no purpose other than character conformity. In response, the State argues the testimony was same transaction contextual evidence. We agree with the State.

"Same transaction contextual evidence" refers to other offenses connected with the primary offense and is admissible when the evidence is necessary for the state to logically present evidence of the charged offense. *Garza v. State*, 2 S.W.3d 331, 335 (Tex. App.—San Antonio 1999, pet. ref'd) (citing *Lockhart v. State,* 847 S.W.2d 568, 570

(Tex. Crim. App. 1992)); *see Sparks v. State*, 935 S.W.2d 462, 466 (Tex. App.—Tyler 1996, no pet.). The reason for admitting such evidence is "simply because in narrating the one it is impractical to avoid describing the other, and not because the other has any evidential purpose." *Mayes v. State*, 816 S.W.2d 79, 86–87 n.4 (Tex. Crim. App. 1991) (en banc).

Officer Mendez spotted appellant coming out of the brush, walking away from the London Grill, and matching the description of the suspect in the aggravated robbery. According to Officer Mendez, he became suspicious when he noticed that appellant looked back as he walked away. The next logical course of action was for Officer Mendez to stop appellant to ascertain whether or not he was involved in the aggravated robbery. The following course of investigation led Officer Mendez to determine appellant's identity—albeit a false identity. Though the evidence of the false identity may not be absolutely necessary for the State's case, evidence of appellant's true identity is. Moreover, such false identification testimony falls into the narrative of the steps Officer Mendez took in responding, investigating the offense, and ultimately identifying and apprehending appellant.

We conclude that the testimony pertaining to appellant's false identity was indivisibly connected to the charged offense and therefore transactional context evidence. *See Garza*, 2 S.W.3d at 335 (testimony of failure to identify was transactional contextual evidence in intoxicated manslaughter case); *Wilkerson v. State*, 874 S.W.2d 127, 131 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd) (admission of extraneous evidence of appellant's attempt to flee that was indivisibly connected to the State's case did not violate

13

rule 404(b)).   We further conclude, to the extent appellant argues the admission of this testimony violated Rule 403, that the possible prejudicial effect of the aforementioned evidence did not substantially outweigh its probative value.   *See* TEX. R. EVID. 403.   The trial court did not abuse its discretion by admitting the extraneous offense testimony. *See Martinez,* 327 S.W.3d at 736.   We overrule appellant's fourth issue.

## V.   CONCLUSION

We affirm the trial court's judgment.

GREGORY T. PERKES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
8th day of September, 2016.

14