**Zedric MILLER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 12–98–00068–CR.**

Court of Appeals of Texas,
Tyler.

July 30, 1999.

476

Mark W. Hall, Tyler, for appellant.

Edward J. Marty, Tyler, for appellee.

Panel consisted of RAMEY, Jr., C.J., HADDEN, J., and WORTHEN, J.

HADDEN, Justice.

Appellant Zedric Miller ("Appellant") appeals his conviction of the offense of aggravated assault. A jury convicted Appellant and assessed his punishment at twenty years' confinement in the Texas Department of Criminal Justice—Institutional Division. In issue one, Appellant contends that the trial court erred in allowing the State to elicit testimony regarding a prior incident involving Appellant and the victim in this case. In issue two, Appellant asserts that portions of the State's closing argument during the guilt-innocence phase of the trial were improper. In issue three, Appellant argues that the trial court erred in requiring Appellant to show his tattoos to the jury as evidence of gang affiliation during the punishment phase of the trial. We will affirm.

The evidence presented at trial showed that on May 4, 1997, Hendrix Wideman ("Wideman"), Jimoine Williams, Kendrix Ray, and Marcella Ervin ("Ervin")[1] arrived together at a party at Lindsey Park in Tyler. Another group of individuals consisting of Appellant, Kevon Johnson ("Johnson"), Kevin Pickens ("Pickens")

---

1. In this opinion, we will refer to this group of individuals as the "Wideman group." We do so for identification purposes only.

and Nicole Hampton[2] also arrived together at this party. While the party was ongoing, Pickens confronted the Wideman group, began "talking noise" and exhibited a pistol that was in his pocket. There was testimony that Appellant and the other members of the Pickens group were standing a few feet away from Pickens when he showed this pistol to the Wideman group. Shortly after this confrontation, both groups moved toward the parking lot. After the Wideman group had entered their vehicle, Pickens fired two to three shots into the ground around the Wideman group's vehicle. Again, there was testimony that Appellant was a couple of feet away from Pickens when he fired the gun in the direction of the Wideman group's automobile. The Wideman group then exited the parking lot, followed closely by the Pickens group, turned onto Spur 364 and headed toward Loop 323. The Pickens group followed the Wideman group the entire time as they proceeded along Spur 364 and approached Loop 323. Wideman testified that the Pickens group's car was almost bumper to bumper with their car as they traveled along Spur 364.

At the intersection of Spur 364 and Loop 323, the Wideman group stopped at the light and the Pickens group pulled up behind them. While the vehicles were stopped at the light, Appellant and Johnson exited their vehicle. Appellant came up to the passenger side of the Wideman group's car while Johnson came up to the driver's side. Each member of the Wideman group testified that they saw Appellant Miller pointing a gun at Wideman, who was in the front passenger seat, and heard a "click." Ervin and Wideman testified that they saw Appellant pull the trigger of the gun he was holding and then

heard a "click." The Wideman group then accelerated into the intersection. As they did so, all of the members of the Wideman group heard a gunshot.

Appellant was indicted for the offense of aggravated assault. The indictment alleged that Appellant intentionally and knowingly threatened Wideman with imminent bodily injury and that Appellant used and exhibited a deadly weapon, a firearm, during the commission of the assault. Apparently, the State intended to submit only the incident at the intersection to the jury as a basis for the jury to convict Appellant of aggravated assault.[3] Prior to opening statements in the guilt-innocence phase of the trial, the trial court conducted a hearing on a motion in limine presented by Appellant. In this motion, Appellant sought to exclude "all extraneous crime or misconduct evidence ... " Appellant argued that the incident at Lindsey Park was not part of the episode that occurred at the intersection of Spur 364 and Loop 323, that evidence of the incident at Lindsey Park would amount to "background contextual evidence" which was inadmissible under Tex.R.Crim. Evid. 404(b)[4] and that the probative value of such evidence was outweighed by its prejudicial effect. The State asserted that evidence of the incident at Lindsey Park was admissible because that incident and the incident at the intersection were part of the same criminal transaction. The trial court overruled this portion of Appellant's motion and permitted the State to elicit testimony regarding the incident at Lindsey Park. The trial court based its ruling on its conclusion that the two incidents were part of the "same criminal episode."

---

**2.** We will refer to this group of individuals as the "Pickens group." Again, we do so for identification purposes only.

**3.** During Appellant's closing argument at trial, the State lodged an objection in which it stated:

> State: ... I never said that there was an aggravated assault anywhere other than at the intersection as to this case.

**4.** Effective March 1, 1998 the Court of Criminal Appeals adopted the Texas Rules of Evidence which apply in both civil and criminal proceedings. However, we apply the rules in effect at the time of the trial in this opinion.

In issue one, Appellant contends that the trial court abused its discretion in allowing testimony concerning the prior shooting at Lindsey Park because this evidence amounted to background contextual evidence. The State argues that evidence of the incident at Lindsey Park was admissible as "same transaction contextual evidence." In light of rules 401 and 404(b) of the Texas Rules of Criminal Evidence, the Court of Criminal Appeals has developed a two-part test to be applied in determining the admissibility of background evidence, i.e., background contextual evidence and same transaction contextual evidence. *See Rogers v. State*, 853 S.W.2d 29, 32 (Tex.Cr. App.1993); *Mayes v. State*, 816 S.W.2d 79, 84–87 (Tex.Cr.App.1991). "The first question to be addressed is whether the background evidence is relevant under Rule of Criminal Evidence 401." *Rogers*, 853 S.W.2d at 32; *see* TEX.R.CRIM. EVID. 401.

All of the members of the Wideman group testified that Appellant was a member of the group of individuals who confronted them at Lindsey Park. Pickens, who was convicted of aggravated assault for his role in the shooting at Lindsey Park, testified at trial that the gun he exhibited to the Wideman group at Lindsey Park and fired in the direction of the Wideman group's vehicle belonged to Appellant. He testified that he saw Appellant with that gun while they were driving to Lindsey Park. This gun was a chrome .22 revolver with a pearl handle. He further testified that as the Pickens group was following the Wideman group on Spur 364, Appellant told him to load this weapon. Pickens did not, in fact, load this weapon but handed it back to Appellant telling him that he had loaded it. Pickens testified that, at the intersection of Spur 364 and Loop 323, Appellant exited their vehicle with this .22 revolver in his possession. Finally, he testified that he saw Appellant point this gun at Wideman. With regard to the appearance of the weapon pointed at Wideman at the inter-

section, Ervin testified that he saw Appellant point a *chrome* gun at Wideman.

The indictment in this case alleged that Appellant threatened Wideman with a firearm. Appellant's primary argument at trial was that he did not possess a weapon at the intersection. He argued that it was another member of the Pickens group, most likely Kevin Pickens, that possessed a weapon at the intersection. If evidence has any tendency to make the existence of any fact of consequence more or less probable, it is relevant. *See* Tex.R.Crim. Evid. 401; *Montgomery v. State*, 810 S.W.2d 372, 387 (Tex.Cr.App.1990) (op. on reh'g). Evidence of the Lindsey Park offense placed Appellant in a confrontation with Wideman shortly before the incident at the intersection. Such evidence also showed that Appellant was in possession of the weapon which he pointed at Wideman prior to the incident at the intersection. Although Appellant did not exhibit or fire his weapon while at Lindsey Park, he was in close proximity to a member of his group who did. The evidence showed that immediately after the incident at Lindsey Park Appellant asked another member of his group, while following the Wideman group's vehicle, to load the same weapon that was exhibited and fired at Lindsey Park. Moreover, the evidence demonstrated that this same weapon was pointed at Wideman at the intersection. Based on the foregoing, we conclude that evidence of the Lindsey Park incident made it more probable that Appellant possessed a weapon at the intersection and pointed this weapon at Wideman. Accordingly, such evidence was relevant. At the very least, this evidence was within the "zone of reasonable disagreement" and we will not substitute our perception of relevance for that of that the trial court. *See Montgomery*, 810 S.W.2d at 391.

The next step is to determine whether the background evidence at issue is admissible as an exception under Texas

Rule of Criminal Evidence 404(b).[5] *Rogers*, 853 S.W.2d at 33. Same transaction contextual evidence has been defined as evidence of other offenses connected with the offense charged. *See Mayes*, 816 S.W.2d at 79; *Jones v. State*, 962 S.W.2d 158, 165 (Tex.App.—Fort Worth 1998, no pet.). It has also been defined as the accused's acts, words, and conduct at the time of the commission of the offense. *See Mayes*, 816 S.W.2d at 86 n. 4. Rule 404 generally mandates the exclusion of character evidence to prove commission of the charged offense. *See* Tex.R.Crim. Evid. 404(a). However, Rule 404(b) provides that evidence of other crimes, wrongs, or acts may be admissible for "other purposes," such as to prove motive, opportunity, intent, etc. *See* Tex.R.Crim. Evid. 404(b). The list of "other purposes" under Rule 404(b) is "neither mutually exclusive nor collectively exhaustive." *Pondexter v. State*, 942 S.W.2d 577, 583–84 (Tex.Cr.App. 1996). "Same transaction contextual evidence is admissible as an exception under Rule 404(b) where such evidence is necessary to the jury's understanding of the instant offense." *Rogers*, 853 S.W.2d at 33. In other words, necessity is an "other purpose" for which same transaction contextual evidence is admissible under Rule 404(b). *Id.* On the other hand, background contextual evidence, which is simply general background evidence, is not admissible as one of the "other purposes" for which evidence may be admitted under Rule 404(b) when it includes an impermissible character component. *See Mayes*, 816 S.W.2d at 88.

■ Appellant seems to argue that evidence of the Lindsey Park incident was not necessary for the jury's understanding of the charged offense. Therefore, according to Appellant, such evidence was inadmissible background contextual evidence.

We disagree with Appellant's contention. For the reasons discussed below, we hold that such evidence was same transaction contextual evidence, which was necessary for the jury's understanding of the charged offense.

■ "[I]t has long been the rule in this State that the jury is entitled to know all relevant, surrounding facts and circumstances of the charged offense; an offense is not tried in a vacuum. *Pondexter*, 942 S.W.2d at 584 (quoting *Moreno v. State*, 721 S.W.2d 295, 301 (Tex.Cr.App.1986). "[W]here several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction, and full proof by testimony ... of any one of them cannot be given without showing the others," such evidence is same transaction contextual evidence which is admissible under Rule 404(b). *See Pondexter*, 942 S.W.2d at 584 (quoting *Rogers*, 853 S.W.2d at 33). Same transaction contextual evidence "imparts to the trier of fact information essential to understanding the context and circumstances of events which, although legally separate offenses, are blended or interwoven." *Camacho v. State*, 864 S.W.2d 524, 532 (Tex. Cr.App.1993). Such evidence illuminates the nature of the crime charged. *Id.* However, as Appellant correctly points out, same transaction contextual evidence is admissible under Rule 404(b) "only to the extent that it is necessary to the jury's understanding of the offense at trial; i.e., when the offense would make little or no sense without also bringing in the same transaction evidence." *England v. State*, 887 S.W.2d 902, 915 (Tex.Cr.App.1994).

In the instant case, the same victim or victims, the same group of perpetrators and the same weapon were involved in both the offense at Lindsey Park and the

---

**5.** Tex.R.Crim. Evid. 404(b) provides, in pertinent part, as follows:

Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident ...

offense at the intersection. After the Lindsey Park assault, the victims and the perpetrators proceeded directly to the intersection of Spur 364 and Loop 323. Although the exact amount of time it took to travel from Lindsey Park to the intersection does not appear in the record, the inference could be drawn that it was minimal, perhaps as little as a few minutes. Further, Pickens testified that he fired his weapon while at Lindsey Park because he believed he saw a member of the Wideman group reach for a weapon in their vehicle. Because of the similarity of the offenses, their close proximity in time and the fact that at least one member of the Pickens group believed the Wideman group had a weapon, evidence of the incident at Lindsey Park enabled the jury to understand the sequence of events that led Appellant to point a weapon at Wideman at the intersection. Such evidence provided at least a partial reason for Appellant to step out of a vehicle, which was parked at an intersection, and threaten a passenger in another vehicle with a firearm. For the foregoing reasons, we conclude that the shooting while at Lindsey Park was indivisibly connected to the charged offense and was necessary for the jury's understanding of the offense alleged. Accordingly, we hold that the trial court did not abuse its discretion in admitting evidence of the Lindsey Park incident as same transaction contextual evidence. *See Sparks v. State,* 935 S.W.2d 462, 466 (Tex.App.—Tyler 1996, no pet.). Further, based on the foregoing, we conclude that the trial court did not abuse its discretion in admitting this evidence because the prejudicial effect of this evidence did not substantially outweigh its probative value. *See Sparks,* 935 S.W.2d at 466 ("The prejudicial nature of same-transaction contextual evidence rarely renders such evidence inadmissible so long as it sets the stage for the jury's comprehension of the whole criminal transaction."); *see also Lockhart v. State,* 847 S.W.2d 568 (Tex.Cr.App.1992).

In issue two, Appellant asserts that portions of the State's closing argument during the guilt/innocence phase of the trial were improper because the State referred to a lesser included offense in the charge as a "class C misdemeanor" on several occasions. Appellant also complains of the prosecutor's statement that a class C misdemeanor is "like a traffic ticket." As the State correctly points out, Appellant failed to object to these portions of the State's closing argument at trial. We disagree with Appellant that the statements at issue were so prejudicial that an objection was not necessary for appellate review. Instead, we conclude that any harm resulting from these statements could have been cured by requesting a proper curative instruction from the trial court. Accordingly, we hold that Appellant's failure to object waived any error associated with these portions of the prosecutor's argument. *See* Tex.R.App. P. 33.1(a); *Curtis v. State,* 640 S.W.2d 615, 618 (Tex.Cr.App.1982). Issue two is overruled.

In issue three, Appellant argues that the trial court abused its discretion when it required Appellant to show his tattoos to the jury as evidence of gang affiliation during the punishment phase of the trial. Appellant concedes that evidence of gang affiliation is admissible during the punishment phase because it is relevant to a defendant's character pursuant to Tex.Code Crim. Proc. Ann. art. 37.03, § 3(a) (Vernon Supp.1999). *See Beasley v. State,* 902 S.W.2d 452, 456 (Tex.Cr.App. 1995). However, Appellant appears to complain that, under Rule 403 of the Texas Rules of Criminal Evidence, the prejudicial effect of requiring Appellant to exhibit his tattoos to the jury "far outweighed" its probative value. Appellant asserts that Detective Richard Cashell ("Cashell"), who testified that he was familiar with local gangs, "could have simply told the jury, what certain letters or markings meant in terms of gang affiliation." Appellant cites no authority to support this contention.

A trial court's ruling on a Rule 403 objection is reviewed under the abuse of discretion standard and will be reversed only if it is not within the zone of reasonable disagreement. *See McFarland v. State*, 845 S.W.2d 824, 837–38 (Tex.Cr.App. 1992); *Lee v. State*, 866 S.W.2d 298, 303 (Tex.App.—Fort Worth 1993, pet. ref'd). Rule 403 "favors admissibility of relevant evidence, and the presumption is that relevant evidence will be more probative than prejudicial." *Long v. State*, 823 S.W.2d 259, 271 (Tex.Cr.App.1991). The record reveals that the State requested that Appellant exhibit his tattoos to the jury as part of the State's proffer of evidence pertaining to Appellant's gang affiliation. The trial court granted this request and required Appellant to roll up his sleeves so that the jury could view his tattoos. While the jury was viewing the tattoos, Cashell explained the meaning of the tattoos and how they demonstrated Appellant's association with a gang. It appears that the period of time in which Appellant was required to show his tattoos was brief, lasting only as long as it took Cashell to explain the meaning of the tattoos within the context of criminal street gangs.

While it may be true that the actual viewing of the tattoos had a greater impact on the jury than if the jury had merely been told they existed, that does not mean that the viewing of the tattoos, in the manner in which it was done here, was unfairly prejudicial. Almost every piece of evidence presented at trial can be said to be prejudicial to one side or the other. Only evidence that is *unfairly* prejudicial must be excluded under Rule 403. *See Blakeney v. State*, 911 S.W.2d 508, 515 (Tex.App.—Austin 1995, no pet.). The State presented evidence which related the tattoos to Appellant's association with a street gang. Moreover, the trial court only required that Appellant roll up his sleeves and the viewing was brief. Based on the foregoing, we cannot conclude that the trial court abused its discretion in overruling Appellant's Rule 403 objection. Accordingly, issue three is overruled.

The judgment of the trial court is *affirmed.*