OPINION HEADING PER CUR 







                     NO. 12-03-00020-CR
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS


EDWARD HILL,                                                §     APPEAL FROM THE 241ST
APPELLANT

V.                                                                         §     JUDICIAL DISTRICT COURT OF

THE STATE OF TEXAS,
APPELLEE                                                        §     SMITH COUNTY, TEXAS





MEMORANDUM OPINION
            Edward Hill appeals his conviction for capital murder, for which he was sentenced to
imprisonment for life. Appellant raises four issues on appeal. We affirm.
 
Background
            Bo Hinton (“Hinton”) was murdered on the morning of August 18, 1999, following a robbery
at Loving’s Food Store in Tyler, Texas. Hinton suffered five gunshot wounds from a Rohm .22
caliber six-shot revolver. Further, abrasions and scrapes on Hinton’s body indicated a violent
physical struggle had occurred during the robbery and murder. 
            Hinton’s blood was found on the clothing of Appellant, Thadius Davis (“Davis”), and Jackie
Andrews (“Andrews”) when they were arrested less than an hour after Hinton’s murder. The gun
used in the murder was found along the path Appellant and his two co-defendants had taken to flee
from the store. Further, money taken from Hinton during the robbery was found on each of the three
men at the time of their arrests. A jury found Appellant guilty of capital murder, and the trial court
sentenced him to imprisonment for life. This appeal followed.



Capital Murder And The Law of Parties
            A person commits murder if he intentionally or knowingly causes the death of an individual. 
Tex. Pen. Code Ann. § 19.02(b)(1) (Vernon 2003). A person commits the offense of capital murder
if he intentionally commits the murder in the course of committing or attempting to commit robbery. 
Tex. Pen. Code Ann. § 19.03(a)(2) (Vernon 2003). The relevant portions of section 7.02 of the
Texas Penal Code state as follows:
 
(a) A person is criminally responsible for an offense committed by the conduct of another if:

              . . . ;
 
(2) acting with intent to promote or assist the commission of the offense, he solicits, encourages,
directs, aids, or attempts to aid the other person to commit the offense; 

              . . .
 
(b) If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by
one of the conspirators, all conspirators are guilty of the felony actually committed, though having no
intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one
that should have been anticipated as a result of the carrying out of the conspiracy.
 
Tex. Pen. Code Ann. § 7.02(a)(2), (b) (Vernon 2003).

Legal Sufficiency of the Evidence
            In his first issue, Appellant contends that the evidence is legally insufficient to support his
capital murder conviction. Legal sufficiency is the constitutional minimum required by the Due
Process Clause of the Fourteenth Amendment to sustain a criminal conviction. See Jackson v.
Virginia, 443 U.S. 307, 315-16, 99 S. Ct. 2781, 2786-87, 61 L. Ed. 2d 560 (1979);see also Escobedo
v. State, 6 S.W.3d 1, 6 (Tex. App.– San Antonio 1999, no pet.). The standard for reviewing a legal
sufficiency challenge is whether any rational trier of fact could have found the essential elements of
the offense beyond a reasonable doubt. See Jackson, 443 U.S. at 320, 99 S. Ct. at 2789; see also
Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); Johnson v. State, 871 S.W.2d 183, 186
(Tex. Crim. App. 1993). The evidence is examined in the light most favorable to the jury’s verdict. 
See Jackson, 443 U.S. at 320, 99 S. Ct. at 2789; Johnson, 871 S.W.2d at 186. Our review is the
same in both direct and circumstantial evidence cases. See Burden v. State, 55 S.W.3d 608, 613
(Tex. Crim. App. 2001). A successful legal sufficiency challenge will result in rendition of an
acquittal by the reviewing court. See Tibbs v. Florida, 457 U.S. 31, 41-42, 102 S. Ct. 2211, 2217-18, 72 L. Ed. 2d 652 (1982).
            In the instant case, both eyewitness testimony and DNA evidence link Appellant to the scene
of the crime during the time frame in which the crime was committed. Curtis Lowe testified that he
saw Andrews and two black males approaching Loving’s Food Store as he was leaving the store at
approximately 8:30 a.m. on August 18, 1999. Christina Carillo, a store employee, arrived for work
before 9:00 a.m. but did not enter the store because she observed through the window that Hinton
was inside fighting with two other individuals. Brenda London, Angela Hood, and Leo Henry
testified that, shortly after 9:00 a.m., they saw three black males running away from Loving’s Food
Store. 
            With the aid of information provided by witnesses, Tyler police officers proceeded to the
home of Andrews’s mother, Betty Andrews. At about this same time, police arrived at Loving’s
Food Store to find Hinton bleeding to death from five gunshot wounds. When the officers arrived
at the Andrews home, they found Appellant, Davis, and Andrews. When Patrolman Robert
Matthews of the Tyler Police Department approached the three men, who were standing in the yard,
Appellant fled. Other Tyler police officers pursued and captured Appellant. Patrol Officer Luis
Correa saw Appellant drop a bloody tee shirt as he fled. Officer Correa also saw Appellant take a
large sum of cash out of his pocket along with a latex glove and drop them three or four feet from
where he was subsequently apprehended. 
            Hinton’s blood was found on the tennis shoes Appellant was wearing at the time of his arrest. 
Bob Henderson, a forensic consultant specializing in blood stain pattern analysis and crime scene
reconstruction, testified that the blood on the tennis shoes was consistent with impact spatter, which
occurs at close range when a victim’s blood is being spilled. He also testified that there were blood
spatters on the shorts Appellant was wearing. He testified that these blood spatters would put the
individual wearing the shorts and tennis shoes in very close proximity to Hinton when he was shot. 
            Based upon our review of the foregoing evidence, we hold that the evidence is legally
sufficient for the jury to have found the essential elements of capital murder beyond a reasonable
doubt. Appellant’s first issue is overruled.
 
Factual Sufficiency of the Evidence
            In his second issue, Appellant contends that the evidence is factually insufficient to support
his capital murder conviction. We must first assume that the evidence is legally sufficient under the
Jackson standard. See Clewis v. State, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996). We then
consider all of the evidence weighed by the jury that tends to prove the existence of the elemental
fact in dispute and compare it to the evidence that tends to disprove that fact. See Santellan v. State,
939 S.W.2d 155, 164 (Tex. Crim. App. 1997). We are authorized to disagree with the jury’s
determination, even if probative evidence exists that supports the verdict. Clewis, 922 S.W.2d at
133. Our evaluation should not substantially intrude upon the jury’s role as the sole judge of the
weight and credibility of witness testimony. Santellan, 939 S.W.2d at 164. Where there is
conflicting evidence, the jury’s verdict on such matters is generally regarded as conclusive. See Van
Zandt v. State, 932 S.W.2d 88, 96 (Tex. App.– El Paso 1996, pet. ref’d). Ultimately, we must ask
whether a neutral review of all the evidence, both for and against the finding, demonstrates that the
proof of guilt is so obviously weak as to undermine our confidence in the jury's determination, or the
proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. Johnson
v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).


 
            A verdict will be set aside “only if the evidence supporting guilt is so obviously weak, or the
contrary evidence so overwhelmingly outweighs the supporting evidence, as to render the conviction
clearly wrong and manifestly unjust.” Ortiz v. State, 93 S.W.3d 79, 87 (Tex. Crim. App. 2002); see
also Sims v. State, 99 S.W.3d 600, 601 (Tex. Crim. App. 2003). A clearly wrong and manifestly
unjust verdict occurs where the jury's finding “shocks the conscience” or “clearly demonstrates bias.” 
Zuniga, 2004 WL 840786, at *4. As the court of criminal appeals explained in Zuniga, “There is
only one question to be answered in a factual-sufficiency review: Considering all of the evidence in
a neutral light, was a jury rationally justified in finding guilt beyond a reasonable doubt?” Id., at *7. 
Contrary evidence may be strong enough that the beyond-a-reasonable-doubt standard could not have
been met, so the guilty verdict should not stand. Id. 
            Here, Appellant contends that there was no eyewitness linking Appellant directly to the
murder and robbery of Hinton. Carillo did not identify the two persons who were fighting with
Hinton when she looked through the window of the store. Lowe could not identify the other two
black males with Andrews. The individuals who spotted the three black males fleeing from the store
shortly after 9:00 a.m. did not specifically identify Appellant. However, Appellant was with
Andrews and Davis at Betty Andrews’s house when Officer Matthews arrived. Further, Hinton’s
DNA, which was on Appellant’s clothing and tennis shoes at the time of his arrest, positively linked
Appellant to the murder and robbery of Hinton. See Meeks, 135 S.W.3d at 112. 
            Appellant further contends that there were no fingerprints or palm prints taken at the store
that matched either his or those of his co-defendants. Further, no fingerprints were found on the
murder weapon. The State contends that this was because Appellant was wearing a latex glove,
which Officer Correa testified he saw Appellant discard as he fled immediately prior to his being
apprehended. David Spence, supervisor of the Trace Evidence Unit at the Southwestern Unit of
Forensic Sciences (“SWIFS”), testified the latex glove that Correa saw Appellant discard contained
traces of barium and lead. Spence also testified that barium and lead are commonly released from
the sides of a gun when it is fired. Spence stated that he was surprised to find trace elements of
barium and lead on the latex glove. Normally, according to Spence, latex gloves do not contain lead
or barium. In light of Spence’s testimony, the presence of the trace elements on the latex glove
supports a finding that Appellant was involved in Hinton’s murder. 
            Further still, Appellant contends that he was not wearing the tee shirt containing Hinton’s
DNA, which was found fifteen to twenty feet from Appellant when he was arrested. Officer Correa
testified that he saw Appellant drop the tee shirt but never saw him wearing it. The record reflects
that Officer Matthews saw Appellant wearing this same tee shirt when he spotted him at Betty
Andrews’s house and began chasing him toward the spot where Correa saw him drop it. Correa
testified that, immediately following Appellant’s arrest, he retrieved the tee shirt from the spot where
he saw Appellant drop it. This evidence strongly supports the jury’s finding.
            Finally, Appellant points out that neither the Department of Public Safety firearms examiner
Joseph Correa nor SWIFS firearm and toolmark examiner Travis Spinder could positively identify
the Rohm .22 caliber revolver as the gun from which the five .22 caliber bullets in Hinton’s body
were fired. However, both of these firearms experts testified that the bullets found in Hinton’s body
were consistent with bullets fired from such a gun. The SWIFS examiner stated that the gun was in
good working order. He also specifically stated that based upon his examination of the lands and
grooves in the gun, he concluded that the five bullets recovered from Hinton’s body during the
autopsy were consistent with bullets fired from this particular gun. Further, Tim Kalafut of SWIFS
testified that the blood found on the gun was positively identified through DNA testing as belonging
to Hinton. 
            As part of his sufficiency challenge, Appellant contends that the testimony of Charles Miller,
an alleged accomplice, must be viewed under the accomplice rule and therefore requires
corroboration. The Texas Code of Criminal Procedure states as follows:
 
A conviction cannot be had upon the testimony of an accomplice unless corroborated by other
evidence tending to connect the defendant with the offense committed; and the corroboration is not
sufficient if it merely shows the commission of the offense.
 
Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon 1979).
            The court of criminal appeals has specifically stated that a review of accomplice witness
testimony is not part of either a legal or factual sufficiency review of the evidence used to convict
a defendant. See Cathey v. State, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999). The accomplice
witness rule is a statutorily imposed sufficiency review and is not derived from federal or state
constitutional principles that define the legal and factual sufficiency standards. Id. at 462-63. We
note that all of the evidence we have discussed thus far is non-accomplice evidence that tends to
connect Appellant to the commission of the capital murder alleged in the indictment. See Trevino
v. State, 991 S.W.2d 849, 951 (Tex. Crim. App. 1999). This satisfies Article 38.14. See id.
            Our review of the record as a whole, considered in a neutral light, does not reveal any
evidence that causes us to conclude that the evidence supporting a finding of Appellant’s guilt
beyond a reasonable doubt is so obviously weak or so greatly outweighed by contrary evidence as
to render the conviction clearly wrong and manifestly unjust. As such, we conclude that the jury
was rationally justified in finding Appellant guilty beyond a reasonable doubt. Therefore, we hold
that the evidence is factually sufficient to sustain Appellant’s conviction. Appellant’s second issue
is overruled.

Admission of Extraneous Offense Evidence
            In his third issue, Appellant contends that the trial court erred in admitting evidence of an
extraneous offense. He argues that the evidence that the gun used in the robbery and murder of
Hinton was taken in the robbery of John Lee on August 6, 1999 constituted evidence of an
extraneous offense that was not relevant to the issue of whether Appellant was guilty of capital
murder.
            Admission of extraneous offense evidence is generally within the trial court’s discretion. 
Montgomery v. State, 810 S.W.2d 372, 390 (Tex. Crim. App. 1990) (op. on reh’g). The general rule
is that evidence of other crimes, wrongs, or acts is inadmissible to prove a person’s character, but
is admissible for other purposes, such as to prove motive, opportunity, intent, preparation, plan,
knowledge, identity, or absence of mistake or accident. Tex. R. Evid. 404(b). If a Rule 404(b)
objection is made to extraneous offense evidence, the proponent of the evidence must persuade the
trial court that the evidence has relevance apart from character conformity, e.g., that it tends to
establish some elemental fact, such as identity or intent; that it tends to establish some evidentiary
fact, such as motive, opportunity, or preparation leading inferentially to an elemental fact; or that it
rebuts a defensive theory by showing the absence of mistake or accident. Montgomery, 810 S.W.2d
at 387-88; Powell v. State, 5 S.W.3d 369, 383 (Tex. App.–Texarkana 1999, pet. ref’d). 
            Texas Rule of Evidence 401 defines relevant evidence as that evidence having any tendency
to make the existence of any fact of consequence to the determination of the action more probable
or less probable than it would be without the evidence. Tex. R. Evid. 401. All relevant evidence
is generally admissible. Tex. R. Evid. 402. The jury is entitled to know all of the relevant
surrounding facts and circumstances of the charged offense; an offense is not tried in a vacuum. 
Moreno v. State, 721 S.W.2d 295, 301 (Tex. Crim. App. 1986). 
            Evidence of same transaction contextual evidence is an exception to Rule 404(b) and is thus
admissible to the extent it is relevant. See Pondexter v. State, 942 S.W.2d 577, 584 (Tex. Crim.
App. 1996) (Evidence is same transaction contextual evidence if the evidence shows that several
crimes are intermixed, or blended with one another, or connected so that they form an indivisible
criminal transaction, and full proof by testimony of any one of them cannot be given without
showing the others.). The prejudicial nature of same transaction contextual evidence rarely renders
such evidence inadmissible so long as it sets the stage for the jury’s comprehension of the whole
criminal transaction. Miller v. State, 2 S.W.3d 475, 481 (Tex. App.– Tyler 1999, no pet.).
            Here, the evidence concerning the murder weapon was relevant to show preparation for the
planned robbery of Loving’s Food Store. The record reflects that the murder weapon was stolen
during the Lee robbery by Appellant’s two co-defendants, Andrews and Davis, as well as a third
party, Chilton Dews. The record further indicates that Appellant, Andrews, and Davis knew Hinton
would probably be armed and that they would need additional firepower to carry out their crime
against him. Although Appellant did not actually participate in the Lee robbery, the evidence
demonstrates that obtaining the gun enabled Appellant, Andrews, and Davis to proceed with their
plan to rob Loving’s Food Store. Thus, evidence tracing the murder weapon to Appellant, Andrews,
and Davis tends to make a “fact of consequence” more probable. See, e.g., Montgomery, 810
S.W.2d at 376 (evidence need not by itself prove or disprove a particular fact to be relevant; it is
sufficient that the evidence provides a small nudge toward proving or disproving some fact of
consequence.). Moreover, evidence demonstrating how the murder weapon was obtained enabled
the jury to better comprehend the criminal transaction in its entirety. See Miller, 2 S.W.3d at 481.
            Extraneous evidence that is same transaction contextual evidence must also satisfy the
balancing test of Rule 403 to be admissible. See Tex. R. Evid. 403. The record in this case includes
evidence that the victim’s DNA was on the gun and that Appellant and his co-defendants had the
victim’s DNA on their clothing. Further, the gun was found discarded in the path Appellant and his
co-defendants used to flee the scene of the crime. This evidence supports a conclusion that the gun
taken in the Lee robbery was the murder weapon. Therefore, Appellant was not unduly prejudiced
by the evidence relating to the Lee robbery. 
             We hold that the trial court did not abuse its discretion in admitting the evidence of how
Appellant, Andrews, and Davis obtained the murder weapon. Appellant’s third issue is overruled.
 
Evidence of Gang Membership
            In his fourth issue, Appellant contends that the trial court erred in admitting evidence of his
alleged gang affiliation. The State responds that Appellant has waived this argument on appeal
because he did not object to this testimony when it was first introduced during the trial. We agree
with the State. 
            To preserve error for appellate review, the complaining party must make a timely, specific
objection and receive a ruling thereon. Tex. R. App. P. 33.1(a); see also Turner v. State, 805 S.W.2d
423, 430 (Tex. Crim. App. 1991). Three steps are necessary to preserve error where the trial court
allows evidence to be admitted or placed before the jury; a timely specific objection, a request for
an instruction to disregard, and a motion for mistrial. Lusk v. State, 82 S.W.3d 57, 60 (Tex.
App.–Amarillo 2002, pet. ref’d). To be considered timely, an objection must be lodged at the
earliest opportunity or as soon as the ground of objection becomes apparent. See Stevens v. State,
671 S.W.2d 517, 521 (Tex. Crim. App.1984); Thomas v. State, 884 S.W.2d 215, 216 (Tex. App.-El
Paso 1994, pet. ref'd).
            Here, Charles Miller testified that Appellant, Andrews, and Davis claimed to belong to a
gang. He testified that Appellant actually claimed to belong to two gangs, the Northside Gangsters
Crips and the 23rd Street Crip faction. Appellant objected that the prosecuting attorney’s questions
to Miller were leading, and the trial court sustained the objection. Appellant later objected that
Miller was not an expert concerning gang activity. The record indicates that the trial court never
issued a ruling on this objection. Subsequently, the prosecutor questioned Tyler Detective Chris
Miller concerning whether Andrews, Davis, and Appellant were members of the Northside
Gangsters. At this time, Appellant objected that evidence of his gang membership was extraneous
and asked for a hearing outside the presence of the jury. 
            Appellant argues on appeal that evidence of his gang membership is inadmissible extraneous
evidence admitted for the sole purpose of showing bad character. When the subject of gang
membership was first raised, Appellant objected that the State was leading the witness. He has not
raised this issue on appeal, and his objection is insufficient to preserve the issue raised. See Turner
v. State, 87 S.W.3d 111, 117 (Tex. Crim. App. 2002) (The issue on appeal must comport with the
issue raised at the trial court.). Appellant’s second objection, that Miller was not a gang expert, was
waived by his failure to obtain a ruling from the trial court.See Tex. R. App. P.  33.1(a)(2)(A). 
Finally, the record before us clearly indicates that the evidence of Appellant’s gang membership was
already before the jury at the time Appellant objected the evidence was extraneous. Therefore, his
objection was untimely. See Stevens, 671 S.W.2d at 521; Thomas, 884 S.W.2d at 216. 
Consequently, Appellant has preserved nothing for our review. Appellant’s fourth issue is overruled.

Conclusion
            Having overruled Appellant’s issues one, two, three, and four, we affirm the trial court’s
judgment.

 
                                                                                                     JAMES T. WORTHEN 
                                                                                                                 Chief Justice



Opinion delivered September 22, 2004.
Panel consisted of Worthen, C.J. and Bass, Retired Justice, Twelfth Court of Appeals, Tyler, sitting by assignment.










(DO NOT PUBLISH)